# EXHIBIT A

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

**Texas Workforce Commission Civil Rights Division** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Artis Ellis | 713-434-7702 | 3/15/1968 |

| Street Address | City, State and ZIP Code |
|---|---|
| 3915 Oakside Dr. | Houston, TX 77053 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Education Commission for Medical Graduates (ECFMG) | Over 500 | 215-823-2117 |

| Street Address | City, State and ZIP Code |
|---|---|
| 40 N. Sam Houston Pkwy. East, 7th Floor, Ste 700, | Houston, Texas 77060 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 11/1/2011  Latest: 11/1/2012
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Mrs. Ellis worked for ECFMG for nearly eight years. She was promoted to Center Manager in 2008. Prior to November 2011, Mrs. Ellis was supervised by Director Betty Hite. Mrs. Ellis often received superb evaluations from Ms. Hite. Mrs. Ellis had never received a negative performance review from Ms. Hite.

Chris Paul ("Paul") replaced Ms. Hite as Director on or about November 2011. Immediately, Mr. Paul began to discriminate against Mrs. Ellis, because she was the only Black manager on Mr. Paul's team. Mr. Paul made inappropriate remarks and harassed Mrs. Ellis on multiple occasions. In March of 2012, Mr. Paul called Mrs. Ellis a "Bad-Witch" and told her that she "would melt." Also in March, Paul told Mrs. Ellis "I must pay you too much money" because of the car she drives. Mr. Paul had never made these discriminatory remarks to any of the other Anglo managers. In March 2012, shortly after Paul made these statements, Mrs. Ellis met with Mr. Paul to express her concern with his discriminatory, humiliating, and often intimidating comments. However, Mr. Paul continued to make inappropriate remarks and put stress on Mrs. Ellis. Mrs. Ellis believes that these remarks were racially motivated and that his continued stress on her was in retaliation for her complaints regarding same.

In May 2012, Mr. Paul told Mrs. Ellis's staff that Ellis was not a good leader. When informed, Mrs. Ellis was taken aback by the disparaging remarks of Mr. Paul. Mrs. Ellis called Executive Director, Dr. Ann Jobe, to inform her of the situation. Mrs. Ellis also emailed Vice President of Human Resources, Betty Lehew, to inform her of the discrimination to which she was being subjected. Both women assured Mrs. Ellis that they would work with Mr. Paul so that she would have no further issues. However, Paul began to retaliate against Mrs. Ellis as a result of Ellis' discrimination report to Ann Jobe and Betty Lehew. On or about August 23, 2012, Paul sent Ellis a "memo." The "memo" contained a list of vague concerns that Mr. Paul allegedly had regarding Mrs. Ellis's performance. The "memo" contained vague comments, such as "we have heard……" and "it has been reported …." without providing any specific reasons that would validate true concerns. The "memo" also contained an "expectations going forward." The "memo" was the first notice of any performance issues Mrs. Ellis had ever seen in her seven years of employment with ECFMG. No "memo" of such type was ever given to another non-Black manager.

As a result of the discrimination Mrs. Ellis was subjected to by Mr. Paul, she fell under a terrible amount of stress caused by what she believed to be Mr. Paul's retaliation for complaints she made to Human Resources. On August 29,

2012 Mrs. Ellis was admitted into the emergency room (ER) as a result of stress, anxiety, and headaches. While at the hospital, Mrs. Ellis was told she had a mass on her brain and that she would need an MRI and further diagnosis. Thereafter, Mrs. Ellis informed Betty Lehew and Mr. Paul that a mass was found on her brain during her visit to the ER. On September 12, 2012 Mrs. Ellis's husband contacted Mr. Paul to inform him Ms. Ellis would be unable to work because she had been admitted to the hospital because of a brain tumor that was found on or about that same morning. Mrs. Ellis was told that the brain tumor required immediate attention. Mrs. Ellis also called Mr. Paul to inform him of her brain tumor; yet his response was "why are you informing me?" Mrs. Ellis went into surgery on September 14, 2012.

As a result of her brain tumor and surgery to remove it, Mrs. Ellis was granted FMLA leave. It is believed that Mr. Paul and ECFMG were angered by Mrs. Ellis taking FMLA leave and additionally developed the perception that Mrs. Ellis would have been disabled from her brain surgery and proceeded to take steps to ensure that she would be unable to return to ECFMG's employment. Indeed, while Mrs. Ellis was still recovering from her brain surgery, she received calls from her employees informing her that Mr. Paul was conducting investigations regarding Mrs. Ellis. Mrs. Ellis believes these investigations were being conducted in order to find reasons to terminate her. Mr. Paul went so far as to interview male employees, questioning whether they had sexual relationships with Mrs. Ellis. Interestingly, Mr. Paul only asked the Black male employees about sexual history with Mrs. Ellis.

Thus, during Ms. Ellis's six weeks of recovering from traumatic brain surgery, Mr. Paul was able to formulate a pretext to terminate Mrs. Ellis. On October 22, 2011, the very day Mrs. Ellis returned from surgery recovery, she was ambushed by Mr. Paul, Ms. Lehew, and Assistant Director, Nancy Ambrose, with pretextual assertions regarding her performance which was allegedly discovered during her absence. Paul produced another "memo," pointing out the areas in which Mrs. Ellis had allegedly failed as a Manager. Ms. Lehew and Mr. Paul pressed Mrs. Ellis on performance issues that addressed such minute things as her discarding employees' personal belonging[s] such as food, clothing, cups and dishes without proper notification. On this same day, Mrs. Ellis was informed that she was being placed on paid administrative leave for an indefinite amount of time. And on November 1, 2012, Ellis was terminated.

ECFMG claimed that Mrs. Ellis was terminated for allegedly failing to follow ECFMG procedures in the hiring of Troi Bryant and for allegedly sharing a secure password with an hourly, non-exempt employee. Both alleged reasons for Mrs. Ellis's termination are ill-founded and pretext for discrimination and retaliation.

During the attack on Mrs. Ellis on October 22, 2012, Ms. Lehew and Mr. Paul repeatedly asked Ellis about Ellis' alleged "relationship" with Troi Bryant, a former employee of ECFMG. They wrongfully accused Mrs. Ellis of violating ECFMG's policy by hiring Bryant and allowing him to be her subordinate without notifying human resources. ECFMG further alleged that Mrs. Ellis did not disclose her "relationship" with Mr. Bryant, allegedly making her violation a terminable offense. However, Mrs. Ellis and Mr. Bryant never had a "relationship," as defined by ECFMG's policy. Mrs. Ellis and Mr. Bryant had a sexual encounter just out of High School, some 26 years prior, from which Mrs. Ellis had a child. However, Mrs. Ellis and Mr. Bryant had not personally interacted for years leading up to his applying for employment with ECFMG. Mrs. Ellis was shocked that she was asked questions regarding the matter, especially given the fact that Mr. Bryant had left work with ECFMG more than a year prior to the issue being raised and had been hired four years prior to that time. Importantly, the "relationship" policy that was an alleged cause of Mrs. Ellis's termination was not applied to all ECFMG employees. Miss Betty Lehew admitted that her step-daughter worked in the human resources department in a direct reporting relationship to her; yet, Ms. Lehew was not reprimanded nor terminated.

With respect to Mrs. Ellis' alleged sharing of a secure password on or about September 14, 2012 as she was about to undergo brain surgery; Ms. Ellis was contacted by Sharon Dalberg, a Standardized Patient Trainer for ECFMG. Ms. Dalberg requested that Mrs. Ellis provide her with Mrs. Ellis' ECFMG password in order to certify exam materials in her absence. At that time, Ms. Dalberg was performing duties to assist Ellis while Ellis was out on FMLA. Under heavy medication in preparation for surgery and faced with a life threatening medical condition, Ms. Ellis discerned that disclosing her password to Ms. Dalberg was the right business decision; thus, Ms. Ellis shared her password with Ms. Dalberg. Significantly, Sharon Dalberg was not reprimanded for violating company policies by using Ms. Ellis's password.

Although ECFMG was eager to rely on Mrs. Ellis's alleged policy violation of sharing her password as a basis for termination, it is known that ECFMG is a company that routinely fails to adhere to its company policies. First, ECFMG does not apply its policies of "password sharing" equally to all employees. There have been many instances of password disclosure amongst employees. It was well known that if someone in ECFMG's IT department needed a password, they could use Manager Brent Bigg's password. Rich Kahn, an Anglo case developer and hourly employee of NBME, was given Mr. Bigg's password when he worked in the Houston office. On a separate occasion in January of 2012, Mr. Paul himself directed Mrs. Ellis to give her password to another employee, Ms. Bea Bright-Davis. ECFMG was aware of these

incidents of password sharing, yet had not disciplined any employee other than Mrs. Ellis. Another instance of an employee's violation of ECFMG's policies that went unnoticed, although ECFMG was aware of the violation, was when Mr. Paul instructed Mrs. Ellis to bypass the required criminal background checks of applicants. ECFMG's reliance on Mrs. Ellis sharing her password and the hire of Troi Bryant as a basis for her termination is a mere pretext to cover up the real reason Mrs. Ellis was terminated—discrimination and retaliation.

ECFMG has purposely discriminated against Mrs. Ellis because of her race by purposely making discriminatory, humiliating and hostile remarks towards Mrs. Ellis, the only Black manager on her team with ECFMG. ECFMG has purposely discriminated against Mrs. Ellis because of her disability by: (1) formulating a "relationship" violation that is not applicable to Ms. Ellis, (2) terminating Mrs. Ellis for allegedly violating a password sharing policy, although no such policy was upheld or enforced throughout ECFMG; and (3) by terminating Ms. Ellis immediately after ECFMG perceived a disability. ECFMG has also purposely retaliated against Mrs. Ellis for taking leave based on her disability and FMLA in direct violation of the Americans with Disability Act, as amended. Additionally, ECFMG retaliated against her because of her complaints of racial harassment, all in direct violation of the Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

4/30/13 — Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

GLADYS ARAUJO
Notary Public, State of Texas
My Commission Expires
July 07, 2016

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

4/30/13