IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTIS ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civ. A. H-14-2126 |
| | § | |
| EDUCATIONAL COMMISSION FOR | § | |
| FOREIGN MEDICAL GRADUATES, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER OF PARTIAL DISMISSAL

Pending before the Court in the above referenced cause, alleging discrimination, failure to accommodate, and retaliatory termination based on Plaintiff Artis Ellis's ("Ellis's") disability (brain tumor) and her taking leave because of it, in violation of the Americans With Disabilities Act of 1990 ("ADA/ADAAA"), as amended, 42 U.S.C. § 12101, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Chapter 21 of the Texas Labor Code and 28 U.S.C. § 1367 (supplemental jurisdiction), are (1) Defendant Educational Commission for Foreign Medical Graduates'("ECFMG's") partial motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6)(instrument #6) with prejudice because the failure is incurable at this point; and (2) Ellis's request for an award of attorney's fees as Rule 11 sanctions (#8).

ECFMG contends that Ellis's ADA and TCHRA claims for failure to reasonably accommodate her disability must be dismissed with prejudice for failure to exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and with the

Texas Workforce Commission--Civil Rights Division (TWC") because, unlike in her Original Complaint (#1), she made no mention of any request for accommodation in her dually-filed charge of discrimination (#6, Ex. A).

In this Opinion and Order, other than a brief summary of the substantive matter of the relevant statutes, the ADA and the TCHRA, the Court will confine its review strictly to the exhaustion-of-administrative-remedies issue.

## Standards of Review

### Rule 12(b)(1)

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, *quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'". *Id.*, *citing*

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.   The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof by a preponderance of the evidence for a 12(b)(1) motion.   *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).   In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.   *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned.   *In re Blue Water Endeavors, LLC*, Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence.   *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a facial attack, allegations in the complaint are taken as true.  *Blue Water*, 2011

WL 52525 at *3*, citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id.*, *citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981). The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981). In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district

court, which does not address the merits of the suit,[1] has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Rule 12(h)(3) states, "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.

**Rule 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the

---

[1] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [ *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id.* To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985). The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*,613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556. Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. at 679, the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 129 S. Ct. at 1949. The plaintiff must plead specific facts, not merely

conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

### Substantive Law

**ADA**

Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), prohibits discrimination against an employee on the basis of physical or mental disability and requires an employer to make reasonable accommodations necessary to allow an employee with a disability to perform the essential functions of her job unless the accommodation would impose an undue hardship on the employer.  Section 12112(a) of the ADA provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia*, "the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . .  unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity."  A "qualified individual with a disability" is defined as "an individual with a disability  who, with or without

reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  42 U.S.C. § 12111(8).  A disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."

The plaintiff bears the burden of requesting reasonable accommodations.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

The ADA was amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which by its express language became effective on January 1, 2009, while the final regulations issued by the EEOC became effective on May 25, 2011. 76 Fed. Reg., 16978, 16999 (2011).  "The ADAAA is principally aimed at reversing Supreme Court precedent perceived as improperly narrowing the scope of protection originally intended by drafters of the ADA."  Louis P. DiLorenzo, *The Intersection of the FMLA and ADA--As Modified by NDAA, ADAAA and GINA*, 860 PLI/Lit 47, 83-84 (June 23, 2011); 29 C.F.R. § 1630.1(c)(4)("reinstating a broad scope of protection under the ADA"; "the definition of 'disability' shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA").  The EEOC emphasized that "the primary object of attention in cases . . . should be whether the covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability."  29 C.F.R. § 1630.1(c)(4).

The ADAAA directs that "substantially limits" should not be as strictly construed as some courts have required in the past and should not require "extensive analysis." ADA Amendments Act of 2008, §2(b)(5), 122 Stat. 3553, 3558. The ADAAA has added "major bodily functions" (e.g., the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions) to the ADA's list of major life activities, including caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, standing, sitting, reaching, lifting, bending, reading, concentrating, thinking, communicating, and working, while defining "physical or mental impairment" as any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more body systems, as well as mental or psychological disorder. ADA Amendments Act of 2008, Pub. L. No. 110-325, Sec. 4, § 3(2)(A) and (B), 122 Stat. 3553, 3555.

Moreover, while retaining the basic definition of disability under the ADA ("a physical or mental impairment that substantially limits one or more major life activities"), "disability" now includes an impairment that is episodic or in remission if it would substantially limit a major life activity when active; examples include epilepsy, hypertension, asthma, diabetes, major depression, bipolar disorder, schizophrenia, and cancer. ADA Amendments Act of 2008, Sec. 4, § 3(4)(D), 122 Stat. 3553, 3555; 29 C.F.R. § 1630(j)(5). An impairment lasting less than six months can be substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ix). An impairment that is in remission but may

-10-

return in a substantially limiting form is a disability under the ADAAA. 29 C.F.R. § 1630.2(j)(1)(vii). The ADAAA also amended definition of "major life activity" in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002), as "activities that are of central importance to most people's daily lives," instead indicating that the word "major" must "not be interpreted strictly to create a demanding standard for disability." 29 C.F.R. § 1630.2(i)(2). Under the ADAAA, tasks involving major life activity of manual tasks, such as fine motor coordination, grasping, or pressuring, "need not constitute activities of central importance to most people's lives." Appendix to Part 1630, *Interpretive Guidance on Title I of the Americans With Disabilities Act* § 1630.2(i); 76 Fed. Reg. at 17008. To be "substantially limiting" an impairment does not have to prevent or significantly restrict a person from performing a major life activity. *Id.*

Furthermore, individuals who are "regarded as disabled," but who do not actually have a disability, only need to show that they were subjected to an action prohibited by the statute, and no longer that the disability substantially limited them in a major life activity. Employers need not provide reasonable accommodations to those employees only "regarded as" having a disability. ADA Amendments Act of 2008, Sec. 6 § 501 (l)(h), 122 Stat. 3553, 3558.

Before a complainant may file suit under the ADA, she must exhaust the statute's administrative prerequisites. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). The ADA

-11-

incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, and 2000e-9 of this title shall be the powers, remedies and procedures that this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations under section 12116 of this title, concerning employment."). The plaintiff must file a charge of disability discrimination with the EEOC within 180 days of the illegal act, or within 300 days if she has filed a complaint with the state or local agency, i.e., here the Texas Workforce Commission--Civil Rights Division, and receive a statutory right-to-sue letter from the EEOC before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1); *DAO*, 96 F.3d at 788-89; *Ikossi-Anastasiou v. Board of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002); *Cisneros v. DAKM, Inc.*, No. 7:13-CV-556, 2014 WL 258755, at *2 (S.D. Tex. Jan 23, 2014). If the EEOC fails to act within 180 days and there is no final agency action, under § 2000e-16, "after one hundred and eighty days from the filing of the initial charge with the department . . . an employee . . . if aggrieved by the . . . failure to take final action on his complaint, may file a civil action." *Thomas v. Napolitano*, 449 Fed. Appx. 373, at *1-2 (5th Cir. Nov. 9, 2011), *citing Martinez v. Department of U.S. Army*, 317 F.3d 511-12, 513 (5th Cir. 1003), *citing Munoz v. Aldridge*, 894 F.2d 1489, 1492-94 (5th Cir.

1990).  If the EEOC issues a right-to-sue letter, the employee must file a civil action in federal court within ninety days.

Some courts in the Fifth Circuit have held that the requirement of filing a charge with the EEOC is jurisdictional, but most have held that it is a statutory precondition to filing suit in federal court.  *See, e.g., Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006), *cert. denied*, 549 U.S. 888 (2006):

> There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction.  The Supreme Court has held that the EEOC or EEO filing deadlines are not jurisdictional.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 . . . . (1982). . . . . However, the reasoning in *Zipes*, which cites our  *en banc* holding in *Coke [v. General Adjustment Bureau, Inc.*, 640 F.2d 58 (5th Cir. 1981]] with approval, relies heavily on legislative history and Supreme Court precedents that characterize the filing deadlines as statutes of limitations."

*See also Taylor v. Books A Million*, 296 F.3d 376, 379 (2002)("Although the filing of an EEOC charge is not a jurisdictional prerequisite, it is a 'precondition to filing suit in district court.'"); *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279 (5th Cir. 1994)("As a jurisdictional predicate Clark had to exhaust EEOC remedies for sex-based discrimination . . . ."). In *Pacheco* the Fifth Circuit affirmed the district court's dismissal under Rule 12(b)(1) for failure to exhaust administrative remedies.  448 F.3d at 795.  The failure to exhaust remedies requires the court to dismiss a plaintiff's claims on the merits. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996).

A lawsuit under the ADA after the exhaustion requirement
is satisfied is restricted to the scope of the plaintiff's
administrative charge and to the scope of the EEOC investigation
that can reasonably be expected to grow out of that charge.
*Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).  "We engage
in a fact-intensive analysis of the statement given by the
plaintiff in the administrative charge, and look slightly beyond
its four corners, to its substance rather than its label. . . . To
be clear, we do not require that a Title VII plaintiff check a
certain box or recite a specific incantation to exhaust his or her
administrative remedies before the proper agency."  *Id.*
"[B]ecause 'the provisions of Title VII were not designed for the
sophisticated,' and because most complaints are initiated pro se,
the scope of an EEOC complaint should be construed liberally."
*Id.* at 488.  Nevertheless a central purpose of the exhaustion
requirement is "to trigger the investigatory and conciliatory
procedures of the EEOC" in an effort to reach "a non-judicial
resolution of employment discrimination claims."  *Id.* at 788-89.
"Title VII clearly contemplates that no issue will be the subject
of a civil action until the EEOC has first had the opportunity to
attempt to obtain voluntary compliance."  *Id.* at 789.  Thus the
scope of the judicial complaint may encompass not only the scope
of the claim in the charge, but also the scope of the EEOC
investigation which "can reasonably be expected to grow out of the
charge of discrimination."  *Id.*, *quoting Sanchez v. Standard
Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  A failure to
reference a claim in the charge, however, may result in dismissal

of that claim.  *Bouvier v. Northrup Grumman Ship Systems, Inc.*,
350 Fed. Appx. 917, 921-22 (5th Cir. 2009)(concluding that although
the plaintiff filed a sex discrimination charge with the EEOC, the
charge never referenced a possible claim for retaliation, so her
retaliation claim may not go forward in court).

The Texas Commission on Human Rights Act ("TCHRA"),
Section 21.051 of the Texas Labor Code, provides in relevant part,
"An employer commits an unlawful employment practice if because of
race, color, disability, religion, sex, national origin or age the
employer . . . discharges an individual, or discriminates in any
other manner against an individual in connection with compensation
or the terms, conditions, or privileges of employment . . . ."

Because one purpose of the TCHRA is to bring Texas law
and federal laws addressing discrimination into accord, federal
law may be cited as authority for the TCHRA.  *Specialty Retailers*,
933 S.W. 2d at 492; *Quantum Chem. Corp. v. Toennies*, 47 S.W. 3d
473, 475-76 (Tex. 2001)(courts may look to federal precedent in
interpreting Chapter 21 of the Texas Labor Code).[2]  To sue for
unlawful employment practices as violations of the TCHRA in court,
a plaintiff must have exhausted her administrative remedies under
Texas Labor Code § 21.202(a) by filing an administrative complaint
no later than the 180th day after the date of the alleged unlawful
employment action occurred.  *University of Texas v. Poindexter*,

---

[2] Texas Labor Code § 21.051 is substantively identical
to Title VII except that it also protects age and disability,
which under federal law are instead covered by the Age
Discrimination in Employment Act and the ADA.  *Quantum Chemical
Corp. v. Toennies*, 47 S.W. 3d 473, 474 n.2 (Tex. 2001).

306 S.W. 3d 798, 807 (Tex. App.--Austin 2009), not pet.).  As with
the ADA and Title VII, the timely filing of an administrative
complaint is mandatory, but not a jurisdictional prerequisite to
filing suit under the TCHRA.  *In re United Auto. Ass'n*, 307 S.w.
3d 299, 310 (Tex. 2010).  When a suit is filed, the plaintiff
"'may raise only the specific issue made in the employee's
administrative complaint and 'any kind of discrimination like or
related to the charge's allegations.'"  *Poindexter*, 306 S.W. 3d at
807, *quoting Elgaghil v. Tarrant County Junior Coll.*, 45 S.W. 3d
133, 141 (Tex. App.--Fort Worth 2000, pet. denied), *quoting Fine
v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

### ECFMG's Motion to Dismiss (#6)

Ellis alleges that ECFMG fired her on November 1, 2012
because of her actual or perceived disability in violation of the
ADA and/or because she took FMLA leave.  ECFMG complains that her
charge of discrimination (#6. Ex. A), filed on April 30, 2013,
over five months after she was discharged by ECFMG, fails to
mention any requests for or denials of requests for accommodation,
so those claims under the ADA and TCHRA must be dismissed with
prejudice.[3]  Even if she used the words, "reasonable

---

[3] In contrast to her Charge of Discrimination, her
Original Complaint alleges that on the day of her return from
leave after surgery to remove her brain tumor, October 22, 2010,
her doctor signed off on her return to work for only half days and
advised her "not to be in stressful situations, that she should
wear an eye patch because of her weakened eye, and that she would
need reasonable accommodations when she returned, but was not sure
which ones."  After she returned from leave, because of the stress
she suffered when officers immediately contended that she had
failed in a variety of areas as a Manager, she requested as a
reasonable accommodation going back on leave. #1, ¶¶ 13, 15, 27

-16-

accommodation" by themselves in her charge, under 29 C.F.R. § 1601.12(a)(3), she is required to make in the charge "'[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Capozzelli v. Allstate Ins. Co.*, No. 2:13-CV-00260-JRG, 2014 WL 786426, at *4 (E.D. Tex. Feb. 25, 2014). "Because Ellis failed to include a failure-to-accommodate claim in [her] EEOC Charge, [she] is therefore barred from asserting it now." *Rodriguez v. Alcoa Inc.*, 805 F. Supp. 310, 322 (S.D. Tex. 2011),[4] *citing EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1998), and *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

### Ellis's Response (#8)

Ellis claims that her lawsuit contains allegations "like or related to the allegations" in her EEOC charge and that can reasonably be expected to grow out of the charge of discrimination" during the pendency of the case before the Commission. *McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)(*citing Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)), *cert. denied*, 555 U.S. 881 (2008). She insists that she did mention in her charge as an accommodation her request for time off of work to undergo surgery for a brain tumor: "As a result of her brain tumor and surgery to remove it, Mrs.

---

[4]   This Court would add and highlight the fact that in *Rodriguez* not only did the court observe that the charge did not include the words, "reasonable accommodation," or "any allegations even hinting that he might raise such a claim in the future," but also that Rodriguez did not "respond to any questions in the EEOC Intake Questionnaire related to accommodation."  805 F. Supp. 2d at 321.

Ellis was granted FMLA leave.  It is believed that Mr. Paul and
ECFMG were  angered by Mrs. Ellis taking FMLA leave and
additionally developed the perception that Mrs. Ellis would have
been disabled from her brain surgery and proceeded to take steps
to ensure she would be unable to return to ECFMG's employment."
#8-2, Ex. A at p. 2.  Furthermore, in her EEOC Intake
Questionnaire (#8-3, Ex. B) she answered question number 12 as
follows:

> **12.  Did you ask your employer for any**
> **changes or assistance to do your job because**
> **of your disability.**
>
> [Ellis checked the "yes" box.]
>
> If, "yes", when did you ask?  <u>on or about</u>
> <u>10/22/2012</u>.  How did you ask (verbally or in
> writing?  <u>Verbally</u>
>
> Who did you ask?  (Provide full name and job
> title of person)
>
> Sharon Roman-Trowell, Human Resources Manager
>
> Describe the changes or assistance that you
> asked for:
> I told my human resource manager that I
> needed to work half days during my first week
> back to work beginning October 22, 2012, per
> a discussion with my doctor.  I also informed
> her that the doctor ordered me to stay away
> from any stressful situations.
>
> How did your employer respond to your
> request?
> I was not provided with the opportunity to
> work half days.  The day I returned to work,
> I was put in a stressful situation.  (Please
> See Charge of Discrimination)

Finally Ellis points out that in her Rebuttal to
Defendant's Position Statement (#8-4, Ex. C), she wrote, "In
short, not only did ECFMG or its agents discriminate against Ms.

Ellis due to her race, those same agents/employees also retaliated against her for taking FMLA leave, interfered with Ms. Ellis' plans to take further FMLA leave and terminated her for requesting reasonable ADA accommodations as well as because of her actual and perceived disabilities."

In sum, she maintains that she therefore exhausted her administrative remedies for "failure to accommodate" claims.  She also requests an award of attorney's fees under Federal Rule of Civil Procedure 11(b)(1) because ECFMG advocated a legally unjustified position and vexatiously and unreasonable multiplied proceedings.

### ECFMG's Reply (#9)

ECFMG contends that Ellis' description of her surgery, time off from work, or FMLA leave, do not relate to failure-to-accommodate claim, but instead relate to her FMLA claim.  There is no requirement under the FMLA to exhaust claims before the EEOC. "Because factual statements are such a major element of a charge of discrimination, [the Fifth Circuit] will not construe the charge to include facts that were initially omitted." *Harris v. Honda*, 213 Fed. Appx. 258, 261 (5th Cir, 2006), *citing Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982), in turn *quoting Sanchez v. Standard Brands*, 431 F.2d 455, 462 (5th Cir. 1970)("[T]he crucial element of a charge of discrimination is the factual statement contained therein.").[5]

_____

[5] In *Sanchez*, the Fifth Circuit continued, *id.*,

Everything else entered on the form is, in essence, a mere amplification of the factual

Regarding supplemental documents outside the charge of discrimination, ECFMG cites *Lopez v. Texas State Univ.*, 368 S.W. 3d 695, 704-05 (Tex. App.--Austin 2012, pet. denied), which this Court summarizes here in more detail and specificity than Defendant because it appears relevant to the issue in this case. First noting that "it is unclear whether and to what extent we may consider supplemental materials that are not attached to the administrative charge form in determining the scope of the charge, the Austin State Court of Appeals points out that federal courts have taken two different approaches:  (1) "consider[ing] intake questionnaires as a matter of course," as in *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278 (5th Cir. 1994)(finding that the statements in the plaintiff's EEOC Discharge Questionnaire "at least raise inferences supporting Clark's claim of gender-based harassment" that was not clearly expressed in her charge)[6]; or (2) the court

---

allegations.  The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more that the attachment of a legal conclusion to the facts alleged.  In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations. Surely the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the ninety-day period, facts sufficient to trigger a Commission investigation.

[6] The appellate court also cites *Silva v. Chertoff*, 512 F. Supp. 2d 792, 812 (W.D. Tex. 2007)("Courts examine all the information presented to the agency to determine what allegations would reasonably be expected to grow from the agency's investigation.").

should consider the intake questionnaires only if (1) the facts
set out in the questionnaire are a reasonable consequence of a
claim set forth in the EEOC charge, and (2) the employer had
actual knowledge of the questionnaire during the course of the
EEOC investigation."[7]).  The Court in *Lopez* chose to follow the
second group because "[t]he first approach is arguably over-
inclusive in that it effectively treats the intake questionnaire
as an independent charge instead of using it merely to *supplement*
claims stated in the charge or reasonably related claims."  368
S.W. 3d at 704-05.  The *Lopez* court further pointed out that the
TCHRA requires that an administrative charge be sworn under Texas
Labor Code Ann. § 21.201(b), and a questionnaire is not.  *Id.* at
705.[8]   The court also cited *Federal Express Corp. v. Holowecki*,
552 U.S. 389, 404 (2008), in which the United States Supreme Court

---

[7] Citing *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp.
2d 757, 772-73 (S.D. Tex. 2009)("In determining whether an
allegation in a complaint falls within the scope of an EEOC
complaint, a court must 'engage in fact-intensive analysis of the
statement given by the plaintiff in the administrative charge, and
look slightly beyond its four corners, to its substance rather
than its label.")(*citing Pacheco*, 448 F.2d at 789); *Hayes v. MBNA
Tech.*, No. Civ. A. 3:03-CV-1766-D, 2004 WL 1283965, at *6 (N.D.
Tex. June 9, 2004)(setting forth standard for determining when
supplemental documents may be considered, including the
questionnaire if the employer was aware of the claims in it during
the EEOC investigation, and stating that *Clark* does not require
supplemental documents to be considered in all circumstances); and
*McCray v. DPC Indus.*, 942 F. Supp. 288, 295 (E.D. Tex.
1996)("Intake questionnaires and EEOC discrimination charges are
two separate things.  *See Early v. Bankers Life and Casualty Co.*,
959 F.2d 75, 79 (7th Cir. 1992). . . . Courts generally do not
treat intake questionnaires as charges," *citing Park v. Howard
Univ.*, 71 F.3d 904 (D.C. Cir. 1995).

[8] The ADA also requires that a charge be sworn.  42
U.S.C. § 12117(a), incorporating by reference 42 U.S.C. § 2000e-
5(b)("Charges shall be in writing under oath or affirmation . . .
.").

held that an intake questionnaire can constitute a charge under the Age Discrimination in Employment Act, but points to *Ojedis v. JetBlue Airways Corp.*, No. A-08-CA-127 LY, 2008 WL 961885, at *4-5 (W.D. Tex. Apr. 9, 2008), declining to extend *Holowecki* to actions under the Texas Labor Code in part because the intake questionnaire was not sworn and because the regulations for one statute do not necessarily apply to a different statute.).

ECFMG contends that neither prong of the supplemental documents test applies here. Arguing that Ellis's failure-to-accommodate claim is not a reasonable consequence of the facts contained in her EEOC charge, it cites several cases disregarding supplemental documents like the intake questionnaire, when the facts are not a reasonable consequence of those alleged in the charge. First, in *Martin v. Tyson Foods, Inc.*, H-10-2047, 2011 WL 1103657, at *3 (S.D. Tex. Mar. 23, 2011), the undersigned judge held that claims in Glinda Martin's demand letter and intake questionnaire for sex, national origin, and religious discrimination, regarding which there was no reference nor facts alleged in her EEOC charge and the charge had only checks for "race" and "disability," were not a reasonable consequence of any facts alleged in her EEOC charge, which centered on her race and disability claims. Applying the two-prong test of *Hayes*, 2004 WL 1283965 at *6, this Court found that while the employer had knowledge of the contents of the demand letter, satisfying the first prong, Martin's claims of sex, national origin, and religious discrimination were not reasonable consequence of any

facts in her EEOC charge.  The Court therefore dismissed these claims.

In *Novitsky v. Am. Consulting Eng'g, LLC*, 196 F.3d 699, 701-02 (7th Cir. 1999), the Seventh Circuit panel refused to allow the plaintiff to proceed with her failure to accommodate claim because it was not related to claims raised in her EEOC charge, even though she did allege facts supporting that claim in her intake questionnaire.  The panel opined, "Under the statute, however, it is the charge rather than the questionnaire that matters.  42 U.S.C. § 20003-5(b). . . . Only the charge is sent to the employer and therefore only the charge can affect the process of conciliation."  *Id.* at 702; *see also Kojin v. Barton Protective Serv.*, 339 F. Supp. 2d 923, 928-29 (S.D. Tex. 2004)(relying on *Novitsky* and dismissing age and hostile work environment claims because they were not included in the charge even though facts supporting those claims were included in the intake form).  "To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not the questionnaire." *McCray*, 942 F. Supp. at 295, *quoting Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 80 (7th Cir. 1992).

ECFMG also cites the *Lopez* case discussed earlier, 968 S.W. 3d at 705, in which the court dismissed four of Lopez's five retaliation claims because the plaintiff did not include facts supporting this theory in her charge even though she did so in her intake form, which was filed contemporaneously with her charge.

In sum, urges ECFMG, Ellis cannot cure what is lacking in her charge with statements in her intake questionnaire or other unsworn document of which ECFMG was not provided a copy. Therefore her failure-to-accommodate claim should be dismissed.

ECFMG asserts that even if the Court finds that Ellis satisfied the first prong, she cannot meet the second because she cannot show that ECFMG had actual knowledge of the contents of the questionnaire during the course of the EEOC investigation. Indeed, she does not even argue that it did. The only document ECFMG received was the charge of discrimination, and Ellis does not argue otherwise. Thus ECFMG had no opportunity to address and conciliate a failure to accommodate claim at the EEOC stage because it did not know such a claim was being alleged.

Furthermore, maintains ECFMG, the supplemental evidence of the failure to accommodate claim should be disregarded because it was not sworn, and both the TCHRA and the ADA require that a charge be sworn and made under oath. Tex. Lab. Code § 21.201(b); 42 U.S.C. § 12117(a)(incorporating by reference 42 U.S.C. § 2000e-5(b)("Charges shall be in writing under oath or affirmation . . . ."). *See Lopez*, 368 S.W. 3d at 705; 29 C.F.R. § 1601.9 (requiring that a charge be "in writing and signed and verified"). For the same reason the Court should not consider Ellis's unsworn rebuttal to ECFMG's Statement of Position.

Finally, ECFMG argues that Ellis' request for costs and fees as a sanction under Rule 11 is improper in light of the cases it has cited in support of its arguments and because the Fifth Circuit has not yet determined definitively whether a

questionnaire can be considered in deciding whether claims have been administratively exhausted. *Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.*, No. 4:13-cv-01626, 2014 WL 645361, at *4 (S.D. Tex. Feb. 19, 2014).

## Court's Decision

It is obvious from the cases discussed here, that courts are divided about what documents they may consider and under what circumstances in the administrative exhaustion inquiry for the ADA and the TCHRA. Because a number of courts in the Fifth Circuit have applied the two-prong test in *Hayes*, 2004 WL 1283965, at *3, to determine if documents in addition to the charge may be considered, this Court will also: (1) are the facts set out in the supplemental document a reasonable consequence of the claim set forth in the charge of discrimination filed with the EEOC/TWC; and (2) did the employer have actual knowledge of the contents of the document during the course of the EEOC? *See, e.g., Kelly v. Capitol One Auto Finance*, No. Civ. A. 3:08CV0266-D, 2008 WL 2653202, at *4 (N.D. Tex. July 7, 2008); *Evans-Rhodes v. Northwest Diagnostic Clinic, P.A.*, 2014 WL 645361, at * (S.D. Tex. Feb. 19, 2014), relying on *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d at 773, and *Martin v. Tyson Food*, 2011 WL 1103657, at *3. Obviously if the first prong is met, the second follows as a matter of course.

In her charge of discrimination (filed as both #6-1 and #38-2), Ellis checked, as the basis of alleged discrimination against her, the boxes for race, retaliation, and disability. While her charge of discrimination does contain facts that might

support her allegations of discrimination based on her race,
black, under Title VII, she has not sued on that ground.  The
Court agrees with ECFMG that Ellis's leave after her surgery was
under the FMLA, and furthermore her request for leave was granted.
The factual allegations in the charge relating to her alleged or
perceived disability under the ADA relate to discrimination and
retaliation, specifically a discriminatory and/or retaliatory
discharge, based on that disability, and not to a failure to
reasonably accommodate her disability based on any requests from
her.  For example, the charge asserts, "It is believed that Mr.
Paul and ECFMG were angered by Mrs. Ellis taking FMLA leave and
additionally developed the perception that Mrs. Ellis would have
been disabled from her brain surgery and proceeded to take steps
to ensure that she would be unable to return to ECFMG's
employment."  Charge at p.2.  It charges that Paul was conducting
investigations that she believed were "being conducted in order to
find reasons to terminate her."  *Id.*  Ellis claimed that the
reasons provided by her employer for terminating her (for failing
to follow ECFMG procedures in hiring Troi Bryant when she failed
to disclose that she had had a sexual relationship with him and
for sharing her secure password with an hourly, non-exempt
employee) were pretexts for discrimination against her based on
her disability.  *Id.* at pp. 2-3.  There are no allegations in the
charge that she requested any reasonable accommodation for her
disability or perceived disability, no less facts showing that
ECFMG refused any request by her for accommodation.  Thus her
charge of discrimination, itself, would not trigger the

investigatory and conciliatory procedures of the EEOC regarding any failure to reasonably accommodate any requests made by Ellis for her disability, nor does it provide a factual basis for the factual allegations made in her Intake Questionnaire.

Furthermore, her questionnaire and her letter of rebuttal were not only unsworn and unverified, but ECFMG has stated that it had no knowledge of them.  Ellis has failed to assert, no less prove, that ECFMG did.

Therefore the Court agrees with ECFMG that Ellis has failed to exhaust remedies regarding any failure to reasonably accommodate her disability under the ADA and the TCHRA.

Finally, the Court agrees that an award of fees as sanctions is unwarranted, and indeed it would be even if the Court had determined that the facts set out in the intake questionnaire were a reasonable consequence of the claim set forth in the charge.  As shown, legal authority does exist to support ECFMG's arguments.

Accordingly for the reasons provided above, and because it is unclear in this Circuit whether such a dismissal for failure to exhaust is for a lack of subject matter jurisdiction or in the nature of a failure to state a claim of a statute-of-limitations bar, the Court

ORDERS that ECFMG's partial motion to dismiss (#6) is GRANTED with prejudice under Rules 12(b)(1) and 12(b)(6).  The Court further

ORDERS that Ellis's request for attorney's fees (#8) is

DENIED.

**SIGNED** at Houston, Texas, this   23rd   day of   June  ,
2015.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE