# EXHIBIT 27

## NOTES

### Artis Ellis meeting with Chris Paul, Nancy Ambrose and Betty LeHew

The following list of issues (in boldface) was presented to Artis Ellis on October 22, 2012. The comments below in italics include her response and any further investigation completed after hearing her response.

1. **It has been discovered that Artis may have had a personal relationship with a former employee, Troi A Bryant, (who is reportedly the father of her daughter, Brittany). This employee was hired and subsequently promoted as a direct report to Artis. It is a violation of ECFMG policy to employ relatives or close, personal relations in the line of supervision. We are not aware that Artis disclosed her personal relationship this employee to her supervisor or HR.**

   *Response:* Artis denied that the former employee she hired and promoted, Troi Bryant, was her daughter's biological father. Artis said that he was a close family friend, someone that she and her family had known for over 30 years, who just took responsibility to act as her father because Artis became pregnant at young age. She was asked how Brittany had the same last name as him and Artis said that he just put his name on the school papers. She was asked whether he adopted her and Artis said, no he was not part of her life, he just stepped up to help me raise her and acted as her father.

   *Further Investigation:* When Artis was put on paid Administrative Leave pending investigation, she was asked to turn her company cell phone in. Her cell phone has a text message between Brittany and Artis dated the day before the meeting where she was asked about her relationship with Troi, in that message Artis says that she "Googled Troi and you and me came up". Brittany responded, "I told you so". Artis responded, "Don't worry the devil gave me a plan." Brittany discouraged her and hoped she "wouldn't have to go there". The following day on the phone with the AVP of HR, Artis admitted that she lied about Troi being her daughter's father because her conscious needed to "come clean" and that she did not disclose this to anyone. These two pieces of information lead us to believe that Artis knew in advanced that she was going to be asked about the relationship and was not surprised by the question but pre-planned the lie she intended to use. She knew she was wrong because she said that her conscience bothered her about it. Also, whichever story was the truth, there was definitely a deception on her part about the relationship with a person she hired and subsequently promoted.

2. **Exam session of Thursday 9-13 was certified with Artis' password while Artis was out on FMLA leave and did not have access to her computer. It is a violation of policy to have an exam session certified by anyone other than center management or above. It is also a violation of policy to given login/password anyone, thus allowing that staff person access to confidential information.**

   *Response:* Artis admitted to giving her password to Sharon Dalberg, a non-management employee, and asking Sharon to sign off the exam on 9/13/2012, while Artis was on leave of absence. Artis admitted that she knew it was a secure password and she did this without anyone's permission. This is a violation of security policy.

   *Further Investigation:* The CSEC Data Security Policy (effective date 6/1/2007) posted on the common drive since 2007, specifically states that:

ECFMG-ELLIS007293

> "Each manager, assistant manager and trainer shall adhere to ECFMG's current password security policy and shall not share or communicate their password with any other person."

This policy is referenced in the Security Manual which all CSEC Staff is required to be familiar with and is reminded of at least 2-4 times a year when manuals are updated. Also, Sharon Dalberg was questions about this and she admitted that yes, Artis gave her her password and asked her to sign off the exam. Sharon asked if she was wrong in doing so and we told her that although it is a management responsibility to sign off the exam, it was not her fault, she was simply following instructions of her manager. This verified for us that not only did Artis give away her secure password; she compromised the integrity of a high stakes exam by allowing an hourly employee to sign off on the exam.

3. It has been discovered that the exam had been short scheduled of staff, which is risking the integrity and validity of the exam. It is the manager's responsibility to appropriately schedule the exam. There were also days when people were scheduled to work when there was no exam, thus wasting payroll dollars and possibly allowing preferential treatment and extra hours/pay to some employees, again the responsibility of the Center Manager.

   *Response:* Artis said that she did not believe she shorted the exam or allowed people to work when not scheduled. She said this would have to be looked into further.

   *Further Investigation:* Upon researching into time keeping and payroll records, it was discovered that during the months of August and September 2012 staff schedules shows:
   8/3 AM, 8/7 AM, 9/8 AM, 9/15 AM, 9/18 AM, 9/25 shifts staffed with 3 proctors instead of the required 4. On 8/7 PM, 8/21 PM, 8/28 PM, 9/11 PM, 9/18 PM, 9/25 PM, the shifts were staffed with 1 control room operator rather than the required 2. It was also discovered that staff had been scheduled to work a shift on 9/25 PM, when there actually was no exam scheduled.

4. Artis did not follow policy when removing SP's from the exam in terms of paying them. Artis, after pulling people, forced them to "clock out" and leave which is against company policy of paying SPs for the day when they are pulled from the exam at no fault of their own. By not following this policy, it negatively impacted the morale at the Center.

   *Response:* Artis stated that she thought she had properly followed the policy

   *Further Investigation:* Upon researching into the time keeping and payroll records for the past 2 years it was discovered that Artis had violated the policy and employees had unfairly been shorted by a total of $6,000 in pay that needed to be paid to those affected.

5. Artis abandoned the strict policy that required SP's to wear bathrobes in all common areas of the building (this is because SP uniforms are consist of a hospital gown with open back and underwear and bra for women). It was pointed out to Artis that she had previously told the Assistant Director of Center Operations that she let SPs wear shorts under their gowns in lieu of robes during the Asst. Director's visit to the Houston Center the week of September 4th.

   *Response:* Artis denied ever saying this and stated that a discussion had been covered in an Assistant Center Manager meeting where it was approved to where shorts in place of a bathrobe. (Thus leaving left the employee's back bare).

ECFMG-ELLIS007294

*Further Investigation:* As the Center Manager, Artis' job was to enforce policies by the employees reporting to her. The handbook policies and the SP Handbook clearly state the following:
"You must exhibit modesty in your habits whether resting or exercising and prevent exposure by wearing a robe while in the hallways and common areas. You are always visible in the exam room, even between encounters."
The Assistant Director also checked the all the Center management meeting minutes from 2011 to present and also the Assistant Center Manager meeting minutes from 2008 to present and found no reference to any discussions about changing the robe policy. Neither the Director or Assistant Director nor any other Center Manager had any recollection of discussion to change the bathrobe policy thus leading to the belief that it was not discussed nor changed.

6. **Artis changed the policy requiring SP's to return to their exam room within two minutes of the next encounter to three minutes, without discussion or authorization.**

    *Response:* Artis stated that this change was discussed in an Assistant Center Manager meeting at the start of this year or late last year.

    *Further Investigation:* The Assistant Director checked the Center Management meeting minutes from 2011 to present and also the Assistant Center Manager meeting minutes from 2008 to present and found no reference to any discussions about changing the two-minute warning procedure. Neither the Director or Assistant Director nor any other Center Manager had any recollection of discussion to change the two-minute rule, thus leading to the belief that it was not discussed nor changed.

7. **Artis violated policy by having 5 years of paper checklists stored at the center. These are to be kept for no longer than 90 days. Along with other confidential exam materials that should have been destroyed were kept in a supply cabinet.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not respond to this issue.

    *Further Investigation:* According to the Security Manual, it is our policy that paper checklists should be scanned in and stored electronically for the USMLE and then shredded after 4 months. This was never done in the Houston Center and the checklists (which are considered secure, confidential exam materials) are backlogged for a number of years in Houston.

8. **Because SP employees are not permitted to leave the Center and are paid for all breaks and lunch periods, it is CSEC policy to supply basic refreshment needs in addition to coffee such as tea, dish soap, cups and other items to SP's. Many SP's came and complained to the Director and other managers filling in during Artis' leave that they no longer had these provided and that Artis had required the SP's to buy/bring their own supplies.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not respond to this issue.

    *Further Investigation:* According to several SP's there were many items that Artis them told would no longer be provided to them. This was confirmed by the Facilities/Office Coordinator (FOC) as well as several SP Trainers. This is something the company has always paid for and Artis had no reason to discontinue that contributed to the low morale among the SP staff in Houston under Artis' leadership.

ECFMG-ELLIS007295

9. A special exam, scheduled in May of 2011, which was supposed to happen on Monday 9-17 was not communicated to staff by Artis nor was the center set up for the exam.

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis said she was out that day and said that Charisse made a mistake and that there are emails to support this.

    *Further Investigation:* In May of 2011, a notification for a special accommodation exam, scheduled for 9-17, was sent to the Center Manager and Assistant Center Manager. There were no preparations made for this special exam as evidenced by a conversation with the SP Operations Specialist (SPOS) during the week of 9-10. The Assistant Director and an Assistant Center Manager from a different center, working in collaboration with the SPOS were able to pull the special accommodations together and ensure the exam occurred. This is the ultimate responsibility of the Center Manager and could have created a liability for the organization had other managers not reacted to ensure the special exam occurred.

10. It was reported that Artis threw away SP's personal belongings such as food, dishes and clothing without notifying SP's, thus contributing further to the low morale among Houston staff.

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis claimed that she did not throw anything out, she had been purchasing mugs that said "CSEC Houston" for the staff but when the CFO asked managers to watch spending, she stopped giving them out and asked staff to bring their own cups with lids.

    *Further Investigation:* According to several SP's there were many personal items that were thrown away by the Artis without any prior knowledge or warning. This was confirmed by the FOC as well as several SP Trainers.

11. Artis would constantly threaten her team by saying "maybe this is not the right job for you" in a style that left feeling that their job was on the line. No coaching or counseling was provided to the individuals who felt threatened.

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not respond to this.

    *Further Investigation:* no further investigation.

12. The physical condition of the building was unacceptable; server room had piles of "junk" in the corner. Ceiling tiles were mis-colored from issues that had happened months ago, there were boxes and boxes of things put in closets that the center had no use for that should have been thrown away long ago. This is a professional, high stakes exam and thus the Center Managers were provided the support and budget to ensure a clean, safe, professional environment for staff and examinees.

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis said that Ray Rosenberg (IT Operations Manager) came to the Center and commented on it being organized. She also said that Sean (IT Support from Atlanta) came and threw away some old boxes and she felt everything was fine then.

ECFMG-ELLIS007296

*Further Investigation:* This was identified and confirmed by Center Management staff who were covering the Houston Center during Artis' leave and by the Director of Center Operations during his stay in Houston to assist the center. The Director worked with FOC and these issues were rectified in a matter of days.

13. **Artis has developed an environment where "telling" on your coworker, instead of supporting each other, is accepted and expected. There is no sense of team work. One example is that a trainer had left central station unlocked and instead of locking it as required, and the next staff member who tried to enter the room left a posted noted that said "security violation" on the door, but did not lock it, and a second person ran to Nancy Ambrose and said the door is unlocked instead of locking the door themselves. Artis created a climate that everything that happens at the center must immediately be reported back to Artis, even though she is on a medical leave, and there are several examples of this. If you do not call Artis the feeling is that you "do not have her back" and that there will be retribution from her.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not have a response for this, she said she would need to know the specific names of who said this to respond.

    *Further Investigation:* no further investigation into this claim.

14. **Artis was having conversations about one of her SP's with a trainer from a different center reporting "we are trying to fire him anyway" as they discussed how he was performing his case.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not have a response for this, she said she would need to know the specific names of who said this to respond.

    *Further Investigation:* This was reported from a manager at the other center who felt uneasy about the fact that a manager would be discussing employee relations with a non-management person, let alone a non-management person from a different center.

15. **Artis had instructed her FOC to "hoard/hide" supplies thus leaving the center staff to run around and try to patch things together rather than have the supplies they needed to run the exam.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis said to talk with Keith and Heidi (FOC and Receptionist). She said she told Keith not to leave things in his office. She said she met with them about supplies.

    *Further Investigation:*
    FOC confirmed that he was instructed, by the center manager, to have things stored in his office as to not "run out" of anything. This was the process instead of putting together a comprehensive inventory control plan which would ensure that the staff always had adequate supplies to run the exam effectively. I system has since been put into place to monitor supplies.

16. **Artis would often go in and ask her SP's to provide her with food.**

    *Response from Artis over the phone with B. LeHew on 10/23/2012:* Artis did not respond

    *Further Investigation:* no further investigation into this claim.

ECFMG-ELLIS007297