**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARTIS ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | 4:14-cv-02126 |
| EDUCATIONAL COMMISSION OF | § | |
| FOREIGN MEDICAL GRADUATES, | § | |
| | § | |
| Defendant. | § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,



*/s/ Alfonso Kennard Jr.*          
Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District Bar No: 713316
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
alfonso.kennard@kennardlaw.com
ATTORNEY-IN-CHARGE FOR PLAINTIFFS

OF COUNSEL FOR PLAINTIFF:



Keenya R. Harrold
Texas Bar No. 24039664
Southern District No. 897938
keenya.harrold@kennardlaw.com
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)

# Table of Contents

I.     SUMMARY OF THE ARGUMENT ................................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................... 4

III.   STATEMENT OF FACTS ............................................................................ 5

IV.   SUMMARY JUDGMENT STANDARD ......................................................... 9

V.    ARGUMENT AND AUTHORITIES ............................................................ 10

   A.     Plaintiff's Termination, Merely 10 days After She Returned From FMLA Leave, and Defendant's Deviation From It's Standard Procedures Raise a Genuine Issue of Material Fact as to Plaintiff's FMLA Retaliation and Interference Claims; thus Summary Judgment is Inappropriate and Should be Denied ......................................................................... 10

   B.     Defendant's Proffered "legitimate non-discriminatory reason" is Pretext--Ms. Ellis did not violate ECFMG's policies, and ECFMG's deviated from its own policies when terminating Ms. Ellis. ................................................................................. 11

   C.     ECFMG Interfered with Ms. Ellis' Right to Return ...................................... 15

   D.     Interference Claim is Based on Strict Liability ........................................... 16

   E.     Ms. Ellis was Terminated Because of Her Disability/Perceived Disability ................. 18

VI.   CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

Federal Cases

*Bell v. Dallas Cnty.*,
   432 F.App'x 330 (5th Cir. 2011) ............................................................................... 18

*Bocalbos v. National W. Life Insurance Co.*,
   162 F.3d 379 (5th Cir. 1998) ............................................................................... 10, 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................. 9

*Chaffin v. John H. Carter Co., Inc.*,
   179 F.3d 316 (5th Cir. 1999) ................................................................................... 10

*Fabela v. Soccoro I.S.D.*,
   329 F.3d 409 (5th Cir. 2004) ................................................................................... 11

*Ford-Evans v. Smith*,
   206 F.App'x 332 (5th Cir. 2006) .............................................................................. 17

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
   793 F.3d 470 (5th Cir. 2015) ................................................................................... 15

*Gowesky v. Singing River Hospital Sys.*,
   321 F.3d 503 (5th Cir. 2003) ............................................................................... 18, 19

*Hunt v. Rapides Healthcare System, LLC*,
   277 F.3d 757 (5th Cir.2001) ............................................................... 11, 14, 15, 16

*Hurlbert v. St. Mary's Health Care System, Inc.*,
   439 F.3d 1286 (11th Cir. 2006) ............................................................................... 11

*Lanier v. Univ. of Tex. Sw. Med. Ctr.*,
   527 F.App'x 312 (5th Cir. 2013) .............................................................................. 17

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ..................................................................................... 9

*Machinchick*,
   398 F.3d 345 ............................................................................................................ 11

*Martinez v. Neiman M arcus Group, Inc.*,
   2006 W L 196953 (N.D. T ex ., January 25, 2006) ................................................. 11

*N.Y. Life Ins. Co. v. Travelers Ins. Co.*,
   92 F.3d 336 (5th Cir. 1996) ....................................................................................... 9

*Nero v. Indus. Molding Corp.*,
   167 F.3d 921 (5th Cir. 1999) ............................................................................... 10, 16

*Sanders-Burns v. City of Plano*,
   594 F.3d 366 (5th Cir. 2010) ..................................................................................... 9

*Sandstad v. CB Richard Ellis, Inc.*,
   309 F.3d 893 (5th Cir. 2002) ................................................................................... 11

State Cases

*Defendant's Motion for Summary Judgment as to Plaintiff's claims of discriminatory discharge
   based on her disability and her taking FMLA.  Exhibit L, Carroll v. Sanderson Farms, Inc.,*

*No. H10-3108,*
   2012 WL 386686 (S.D. Tex. Sept. 5, 2012) ........................................................................ 17

Federal Statutes

29  U .S.C.  §  2601(b) ........................................................................................................ 16
29 U.S.C. § 2615(a)(1) ...................................................................................................... 17
29 U.S.C.A. § 2614(a)(1) ................................................................................................... 16
29 U.S.C.§2615 ................................................................................................................ 10
29 USC § 2601 ......................................................................................................... 4, 11, 14
42 U.S.C. §§ 12101 ............................................................................................................. 4

State Statutes

Texas Labor Code §21.051 ................................................................................................. 4
Federal Rules
Fed. R. Civ. P. 56 ............................................................................................................... 9
Federal Regulations
29 C.F.R. § 825.220(b) ....................................................................................................... 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ARTIS ELLIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | |
| | § | **4:14-cv-02126** |
| **EDUCATIONAL COMMISSION OF** | § | |
| **FOREIGN MEDICAL GRADUATES,** | § | |
| | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Artis Ellis ("Plaintiff" or "Ms. Ellis") respectfully requests the Court deny Educational Commission of Foreign Medical Graduates, ("Defendant", "ECFMG", or the "Company") Motion for Summary Judgment.  In support, Plaintiff shows the Court as follows:

## I.      SUMMARY OF THE ARGUMENT

There was no policy violation.  In fact, when Betty Lehew, Vice President of Human Resources and Nancy Ambrose, former Assistant Director of Center Operations were asked, in their respective depositions, about Ms. Ellis' alleged policy violation, specifically violation of ECFMG's Relative Policy, neither Ms. Lehew nor Ms. Ambrose could unequivocally state how Ms. Ellis violated the policy.  In a far-fetched attempt to justify ECFMG's discriminatory and retaliatory actions, both claimed that Troi Bryant was Ms. Ellis' "significant other" as defined by the policy.  However, a simple, comprehensive look at the policy, and the definitions contained therein, demonstrates that Ms. Ellis did not violate ECMG's Relative Policy, because Ms. Ellis and Mr. Bryant are not (nor have they ever been) "relatives" as the term is clearly defined by ECFMG's Relative policy.

1

Specifically, ECFMG's policy states that "ECFMG will not hire or employ anyone in a reporting relationship with the following relation to an existing full-time or part-time employee: spouse, parent, child or sibling, including step or adoptive relationships, grandparent or grandchild, or in-laws to the same degree…" (Exhibit A, bates stamped document, Ellis 000246, Relative Policy).  Notably, the policy applies to those persons "related by blood, adoption, marriage, domestic partnership, affianced or significant other"; and, for the purpose of the policy, a "significant other" is defined as an "inter-personal relationship between individuals which creates a relationship similar to" a "relative" (those related by virtue of blood, adoption, or marriage), "domestic partnership" (two people living together) or "affianced" (engaged to be married). *Id*.

In this case:

- Plaintiff and Mr. Bryant are not relatives—they are not related by blood, adoption or marriage.  And, the evidence shows that Plaintiff and Mr. Bryant were never related by blood, adoption or marriage.  In fact, Plaintiff and Mr. Bryant, as described in greater detail below, were never in a relationship of any kind which was vehemently explained to Ms. Lehew before Ms. Ellis was terminated.

- Plaintiff and Mr. Bryant are not in a domestic partnership.  The evidence shows that Plaintiff and Mr. Bryant never lived together.

- Plaintiff and Mr. Bryant were not engaged to be married.  The evidence shows that Plaintiff and Mr. Bryant were never engaged to be married at any time.  In fact, both Plaintiff and Mr. Bryant have been married to their individual spouses for decades.

Consequently, Plaintiff and Mr. Bryant are not relatives—as defined and explicitly outlined in ECFMG's Relative Policy.  Because Plaintiff and Mr. Bryant are not relatives under the policy, Defendant's proffered reason for Ms. Ellis' termination is nothing more than a mere pretext for discrimination and retaliation.  And, to further illustrate the falsity of Defendant's proffered reason for Plaintiff's termination, Ms. Lehew, Vice President of Human Resources,

admitted in her deposition that **her step-daughter worked in the same HR department where she acted as Vice President and still works to this day**.  The Relative policy explicitly states that "ECFMG will not hire or employ anyone in a reporting relationship with the following relationship….step or adoptive relationship."  (Ex. A).  Thus, the hiring of Ms. Lehew's step-daughter to work in the Human Resources department with Ms. Lehew (as her supervisor) is an unequivocal violation of the Relative Policy—yet, Ms. Lehew was not terminated and as of the day of Ms. Lehew's deposition, she still holds the position of Vice President of Human Resources at ECFMG.

Moreover, the stated purpose of the policy is to "avoid real or perceived conflicts of interest, influence, or favoritism."  (Ex. A).  At the time of the "investigation", and Ms. Ellis' termination, **Mr. Bryant was no longer employed at ECFMG**.  In fact, **he had not worked for ECFMG for over a year**—which begs the question, how could Ms. Ellis show favoritism to an **ex-employee**?  Clearly, Defendant's proffered reason for terminating Ms. Ellis is false and mere pretext, because Ms. Ellis did not violate the policy, and Ms. Ellis could not show favoritism to an employee that was no longer working at the company and had not been employed at ECFMG for over a year.

Plaintiff not only raises genuine issues of material fact to defeat summary judgment, but she has direct evidence that ECFMG brazenly violated the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA").   Here, there is direct evidence that prior to Ms. Ellis taking FMLA in September of 2012, she had no formal disciplinary action against her. Instead, she successfully worked for ECFMG for almost seven (7) years as its Center Manager— a position she was promoted to in October 2008 because of her exemplary performance in her prior role as the Houston Center Assistant Manager.  In September of 2012, Ms. Ellis was forced

to take FMLA leave and have emergency surgery after a large tumor was found on her brain.  On the **very day** Ms. Ellis returned to ECFMG from FMLA leave, she was placed on administrative leave—allegedly because of an investigation, conveniently prompted by an anonymous letter, and conducted while she was in the hospital and recovering from brain surgery.  Notably, Ms. Ellis was placed on administrative leave in violation of ECFMG's Corrective Action policy and never allowed to come back to work.  Instead, ten (10) days later, Ms. Ellis was terminated from ECFMG.   Here, the timing of adverse employment actions taken against Ms. Ellis, coupled with ECFMG's deviation from its Corrective Action policy and the phony reasoning given for Ms. Ellis' termination, raise genuine issues of material fact to show that Defendant violated the FMLA and ADA—thus, summary judgment should be denied.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

On July 24, 2014, Ms. Ellis brought this action pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*., and 29 USC § 2601 *et seq*., and the Family Medical Leave Act, and Texas Labor Code §21.051, *et seq*. to correct and recover for ECFMG's unlawful employment practices.

On October 7, 2016, Defendant filed a Motion for Summary Judgment wrongly claiming that no genuine issue of material fact exists, and that ECFMG's did not discriminate or retaliate against Plaintiff.  In reality, ECFMG's misstatements and nebulous assertions demonstrate that *genuine issues of material fact do exist* and that such factual disputes are within the province of the jury to decide.  Defendant's Motion for Summary Judgment, and the relief prayed for therein, should be wholly denied because (1) Defendant fails to meet its initial summary judgment burden, because Defendant has not shown that it is entitled to judgment as a matter of law, and

(2) a myriad of genuine issues of material fact exist for the jury to decide.  Thus, Plaintiff now files this Response in Opposition to Defendant's Motion for Summary Judgment.

### III.        STATEMENT OF FACTS

Plaintiff began her employment with Defendant as an Assistant Manager of the Houston Center in April 2005.  (Exhibit B, Affidavit of Artis Ellis; Exhibit C; Deposition of Artis Ellis at p. 36:14-15).  She performed so well in her role as an Assistant Manager that she was promoted to Center Manager on or about October 2008.  (Ex. B).  In that role, Plaintiff managed 80 to 100 employees at any given time.  *Id*.  At this time, Plaintiff sincerely loved her job, and had not received any complaints from staff or administration.  *Id.*  For years, Ms. Ellis worked at ECFMG without incident, stellar performance evaluations and no formal disciplinary action. (Ex. B, Ex. C at p. 230:12-18; Exhibit D, Deposition of Nancy Ambrose at p. 17:8-10, 16-19). In November 2011, Ms. Ellis' previous manager, Betty Hite, retired and was replace by Chris Paul—and that is when the environment changed for Ms. Ellis.  (Ex. B).  According to Ms. Ellis, ECFMG "went from an environment [she] once felt very fortunate to be a part of, to one of stress and hostility" because of Mr. Paul's inappropriate comments and constant harassment.  *Id*.

On August 29, 2012, Ms. Ellis was rushed to the emergency room after suffering from headaches due to extreme stress and anxiety caused by her working environment.  (Ex. B). While at the hospital, Ms. Ellis was told she had a mass on her brain, and she needed a CT scan to properly diagnosis the brain mass.  *Id.*  On September 12, 2012, Plaintiff contacted Director, Chris Paul, to let him know that she had a migraine and would be unable to come into work. When she returned to the emergency room, she was told she had a brain tumor that required immediate, unexpected surgery.  *Id*.  On September 14, 2012, Ms. Ellis underwent extensive brain surgery.  *Id*.  Ms. Ellis requested FMLA leave shortly after surgery (since the surgery was

so unexpected) for the time she missed for the surgery and for the time it would take to recover from having brain surgery.  (*Id*.; Exhibit E, bates stamped document ECFMG-Ellis 000390-000399, FMLA leave paperwork).

Against the advice of her physicians, Ms. Ellis asked to return to work on October 22, 2012 and obtained the proper release from one of her doctors.  (Exs. A, E).  Ms. Ellis informed Human Resources Manager, Sharon Trowell, that her doctor advised her to limit stress because it would have an adverse effect on her recovery.  (Ex. C at p. 152:15-19)(explaining "I had told Betty and Sharon and the people in HR that I could not be under stress.  My doctor said that, the same thing, that he could not afford to lose me on this side of the table and I could not afford to lose me on this side of the table, and I could not be up under that—up under stress).  She also advised Ms. Trowell that one of her eyes was weak as the muscle had detached during surgery and she would require the use of eye patch.  (*Id*. at p. 155:13-15).  Finally, Ms. Ellis told Ms. Trowell, the week before she returned to work, that her doctor was releasing her to return to work for just half days the first week.  (Ex. C at p. 155:13-15).

The <u>very day</u> Plaintiff returned to work from FMLA leave, October 22, 2012, she walked into an ambush.  (Ex. B).

Q:      Okay. Okay. And what did they say when—when they walked in?

A:      We greeted each other, said hello, with some pleasantries, and then they ambushed me with firing—they knew I wasn't suppose to be up under stress.  They started ambushing me with firing questions and gave me a— they didn't even give me a list of concerns.  They just started with a whole list of things that—it was brought to my attention, employees stated, management—manage—management did this, and none of—a lot of it I had never even heard before."

(Ex. C at 156:20-157:3; 152:12-153:24).

When Plaintiff entered her office she was met by Mr. Paul, Betty Lehew, Vice President of Human Resources, and Nancy Ambrose, Assistant Director.  (Ex. C at p. 153:20-24).  They had a list of the areas in which Plaintiff had allegedly failed as a Manager.  (Exhibit F, bates stamped document ECFMG-Ellis 000248-000249, entitled "Houston Issues").  Ms. Lehew and Mr. Paul went down the list "Houston Issues"—issues that were never brought to Ms. Ellis' attention prior to taking FMLA leave. (Ex. C at p. 157:4-21)("I had ever heard that before or the complaints before.  Never was given a corrective written action to—to even correct the—the action.  Never even seen the memo like that before").

After the meeting with management, Ms. Ellis was placed on administrative leave:

Q:      So when was she put on administrative leave?
A:      On the day that she returned, after a meeting.
Q:      On the day that she returned from FMLA leave, correct?
A:      After the meetings with her supervisors.
Q:      And did she ever return to work after that administrative leave?
A:      No.

(Exhibit G, Deposition of Betty Lehew at p. 11:3-10).

Notably, under ECFMG's Corrective Action Policy, "administrative leave is used when the supervisor/manager perceives that the employee may cause a potential threat to themselves or others or when the employee is behaving in a disruptive and/or unruly manner that management is not able to handle."  (Exhibit H, bates stamped ECFMG-Ellis 006775-006778, Corrective Action Policy).  Ms. Lehew admitted in her deposition that Ms. Ellis was not acting in a disruptive or unruly manner during the meeting (Ex. G at p. 16:21-23), but Ms. Ellis was still placed on administrative leave—a complete deviation from ECFMG's Corrective Action Policy.

ECFMG claims that it found out about these alleged policy violations because of an "anonymous letter", conveniently received by Chris Paul, while Ms. Ellis was out on leave.  (Ex. D at p. 20:16-21:14).  Admittedly, neither Ms. Ambrose nor Ms. Lehew (Human Resources)

7

actually investigated the claims against Ms. Ellis before bombarding her with these allegations on her first day back to work or before placing her on administrative leave.  (Ex. D at p. 21:15-19; Ex. G at p. 9:8-14).

Specifically, ECFMG claimed that Ms. Ellis violated the Relative Policy and Data Security Policy, as well as a laundry list of other issues—for example, a claim was made that Ms. Ellis did not make patients wear robes and would throw away employee's foods. (Ex. F).  Despite the fact that Defendant knew Plaintiff was not supposed to undergo stress, they continued to press her on her alleged "mistakes." (Ex. C. at p. 152:12-21).

After being interrogated by three people, with complete disregard for her health, Plaintiff feared that the stress she was suffering would cause her to fall ill so she asked to go back on FMLA leave.  (Ex. C at pp. 201:20-202:24)("I specifically told her I need—I wanted to go back on FMLA leave").  When Plaintiff requested to take the rest of her FMLA time, she was told by Ms. Lehew "off the record, you need to go back—you know, on personal leave of absence." (*Id.* at 203:4-6).  Instead of taking a personal leave, Ms. Ellis was placed on administrative leave by management. (Ex. G at p. 11:3-10).

Ironically, Ms. Ellis was never allowed to return back to work or given the opportunity to "correct" her alleged mistakes—yet, another deviation from ECFMG's Corrective Action policy which states "termination occurs when an employee has failed to correct a problem or problems or situations despite receipt of a written warning and/or final warning."  Here, Ms. Ellis did not receive a written warning, a final warning, or given the opportunity to correct the problems or situations.  (Ex. G at p. 20:4-14).  On or about November 1, 2014, Ms. Ellis was terminated. (Ex. D at p. 50:16-51:2).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only in cases where the record, taken as a whole, together with any affidavits, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56; *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996).  A party moving for summary judgment must demonstrate (1) "the absence of a genuine issue of material fact" and (2) that it is "entitled to judgment as a matter of law."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  *Id*.

Further, in evaluating whether summary judgment is appropriate, the court "views the evidence in light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010).  Here, where there is a reasonable dispute as to the facts, the facts should be viewed favorably as to Ms. Ellis, the nonmovant.   In light of ECFMG multitude of self-serving assertions, and the contradicting evidence, the company has failed to demonstrate either of the two requisite showings necessary to obtain summary judgment.  Moreover, Ms. Ellis has provided, in greater detail below, evidence of each element of her disability discrimination and retaliation claims, as well as her FMLA interference and retaliation claims, and established genuine issues of material fact exist.

## V.    ARGUMENT AND AUTHORITIES

**A. Plaintiff's Termination, Merely 10 days After She Returned From FMLA Leave, and Defendant's Deviation From It's Standard Procedures Raise a Genuine Issue of Material Fact as to Plaintiff's FMLA Retaliation and Interference Claims; thus Summary Judgment is Inappropriate and Should be Denied.**

As the Fifth Circuit has explained, the Family Leave Act contains two distinct causes of actions. *See e.g., Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). The first cause of action relates to an employee's entitlement or substantive rights to employment. "An employee's right to return to the same position after a qualified absence falls under this category." Id. The second type of claim under the FMLA is prospective, and prohibits employers from interfering with, restraining or denying the employee's exercise or an attempt to exercise her FMLA rights, or retaliating or discriminating against the employee for exercising her rights under the FMLA. Id. At 92; see also 29 U.S.C.§2615. The evidence in this case shows that Defendant violated both provisions of the FMLA.

### 1.   ECFMG Retaliated Against Ms. Ellis for Taking Leave.

To prevail in an action against her employer, an eligible employee who believes that she has suffered an adverse employment action must demonstrate that 1) she engaged in activity protected by the FMLA; 2) she suffered an adverse employment decision; and 3) the adverse decision was made because she took FMLA leave. *See Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos v. National W. Life Insurance Co.*, 162 F.3d 379, 383 (5th Cir. 1998), cert denied, 528 U.S. 872 (1999). Adverse action can be established by showing that either that she was treated less favorably than an employee who had not requested leave under FMLA, or that adverse decision was made because of

plaintiff's request for leave.  29 U.S.C.A. §§ 2601 et seq., *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5ᵗʰ Cir.2001); *Bocalbos* at 384.

> 2.  Ms. Ellis was terminated 10 days after returned from FMLA leave.

This is one of the rare cases where there is direct evidence of retaliation, in addition to circumstantial evidence.  Plaintiff has produced substantial direct evidence that she was terminated "because she took FMLA leave."  The strongest evidence comes from the timing of Plaintiff's termination.  With respect to causation, "'timing can sometimes be a relevant factor…where the timing between a protected activity and an adverse employment action is 'suspicious[ly] proximate.'"  *Martinez v. Neiman Marcus Group, Inc.*, 2006 WL 196953, *6 (N.D. Tex., January 25, 2006), *quoting Fabela v. Soccoro I.S.D.*, 329 F.3d 409, 418 n.19 (5th Cir. 2004).  In FMLA cases, a close temporal proximity between protected conduct (going on leave and/or attempting to be restored), and the adverse employment action is generally sufficient to create an inference of FMLA retaliation.  *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286 (11th Cir. 2006).  There is solid causation evidence in this case, because the day Ms. Ellis returned from FMLA leave she was placed on administrative leave and 10 days later she was terminated.

> ### B.  Defendant's Proffered "legitimate non-discriminatory reason" is Pretext[1]--Ms. Ellis did not violate ECFMG's policies, and ECFMG's deviated from its own policies when terminating Ms. Ellis.

---

[1] To establish pretext, a plaintiff merely needs to put forth evidence *tending to show* that the reason offered by Defendant is pretext for discrimination. *Machinchick*, 398 F.3d 345, 350.  In *Machinchick*, the Fifth Circuit held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Machinchick*, 398 F.3d at 350-51.  "Evidence *demonstrating* the falsity of the employer's explanation, taken together with the *prima facie* case, is likely to support an inference of discrimination *without* further evidence of [the] defendant's true motive'" *Id.* at 351 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)).

First, ECFMG claims that it decide to investigate Ms. Ellis based on an anonymous letter Mr. Paul allegedly received while Ms. Ellis was out on leave.  (Ex. D at p. 20:16-21:14).   Ms. Lehew and Ms. Ambrose confirmed that Ms. Ellis did not have any formal disciplinary action against her prior to taking leave.  (Ex. D at p. 17:8-10, 16-19; Ex. C at 230:12-18; Exhibit K, Email from Ms. Lehew to Ms. Ellis dated June 27, 2012)(explaining that just three months before she took leave, there were no plans to replace Ms. Ellis).  In addition, Ms. Ellis did not have any staff complaints prior to taking leave. (Ex. B).  Ironically, after Ms. Ellis went out on leave, all of sudden there are multiple complaints against her.  (Ex. F).

Even if the Court believes Mr. Paul just happened to receive an anonymous letter from an unknown employee, Ms. Lehew and Ms. Ambrose admit that they did not investigate the claims against Ms. Ellis before placing her on administrative leave—the Vice President of Human Resources and the Assistant Director of Operations wholly neglected to even investigate the claims against Ms. Ellis before ambushing her on the day she returned from leave and then placing her on administrative leave. (Ex. D at 21:15-19; Ex. G at p. 9:8-14).  There are clearly issues of fact and credibility determinations that should be made by a jury.

### 1. *ECFMG's Relative Policy*

Next, there is a genuine issue of material fact as to whether Ms. Ellis violated ECFMG's policies.  In regards to the Relative Policy, Ms. Ellis and Mr. Bryant are not relatives.  (Exhibit I, Deposition of Troi Bryant at pp. 88:20-90:14; Ex. C at 109:17-19; Ex. G at 24:16-26:10).  Ms. Ellis and Mr. Bryant had a one night stand when Ms. Ellis was in high school that resulted in a child—more than 20 years before Mr. Bryant went to work at ECFMG.  (Ex. I at 17:24-20:3)(explaining that Mr. Bryant and Ms. Ellis **only had one** sexual/romantic encounter).  That

12

simply does not make Ms. Ellis and Mr. Bryant relatives or "significant others" under any stretch of the imagination—and more importantly, under ECFMG's Relative Policy.

Understandably, Ms. Ellis was embarrassed that she had a child out of wedlock at a young age and felt that it was none of management's concern.  Ms. Ellis testified: "that was a lot of shame, and that was over 25 years ago, or longer.  And that was a lot of shame that was about that, regarding that, having a child out of wedlock, and it was just a one-night stand."  (Ex. C at p. 161:22-25).  She went on to state "but now I'm over 40.  My daughter, by the time Troi came there, she had already graduated with a degree.  There was nothing to gain."  (*Id.* at 107:21-24).  Moreover, Ms. Ellis and Mr. Bryant have been married to their individual spouses for decades.  (Ex. I at p. 14:23-15:3)(Mr. Bryant has been married to his wife, Jackie, for 27 or 28 years).

Additionally, Ms. Ellis was not involved in Mr. Bryant's hiring at ECFMG.  (Ex. C).  He found out about the position from his wife, who was also an employee at ECFMG.  (Ex. I at 86:19-24).  Moreover, the entire purpose of the Relative Policy is to prevent "favoritism" in the workplace. (Ex. A).  At the time that Ms. Ellis was terminated, Mr. Bryant had not worked at ECFMG for over a year. (Ex. D at 26:18-27:19).

> Q:     So they had a perception that she was biased for an employee that no longer worked there?
>
> A:     That she was possibly biased, yes.
> Q:     To an employee that no longer worked there, correct?
> A:     Correct.

(Ex. D at 27:14-19).

Simply stated, Ms. Ellis and Mr. Bryant are not relatives nor have they ever been married, lived together, engaged, or any way related as defined by ECFMG's Relative Policy. She could not show favoritism (which is the purpose of the policy) because Mr. Bryant was no longer employed at ECFMG—and had not worked there for over a year.   In this case,

Defendant's proffered claims are false and mere pretext to justify ECFMG's discriminatory and retaliatory acts against Ms. Ellis.   Moreover, as previously stated, Ms. Lehew "violated" this same policy by hiring her step-daughter and allowing her step-daughter to work in the same department where she was Vice President—i.e. in a supervisory role. (Ex. G at p. 27: 6-13). Ms. Lehew was not terminated; and, in fact, she is still working for ECFMG today. (Ex. B; *see also* 29 U.S.C.A. §§ 2601 et seq.; *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 768 (5th Cir.2001)(explaining adverse action can be established by showing Plaintiff was treated less favorably than an employee who had not requested leave under FMLA).

    *2.  Data Security Policy*

    In regards to the Data Security Policy, there are equal genuine issues of material fact. ECFMG claims that Ms. Ellis gave her password to a subordinate while out on leave—and that is one of the reasons for her termination.  (Ex. F).   It is important to remember that Ms. Ellis was recovering from brain surgery at the time this alleged incident occurred.  (Ex. B).   She was highly medicated and does not call giving her password to anyone.  (Ex. C at p. 166:17-19; 164:16-24)(explaining "I was under a lot—I was having brain surgery. I talked to a lot of people. I was under a lot of different medication).   Further, Ms. Lehew nor Ms. Ambrose investigated the claim to ensure that Ms. Ellis did in fact give out her password.  Thus, <u>ECFMG wants this Court to believe that out of the approximately 76 to 114 exams that were administered at ECFMG during the time that Ms. Ellis was out on leave (all the others were administered by Ms. Ambrose)—that for this **one** particular exam, Ms. Ellis called for her sick bed, after brain surgery, to give out her password to administer this one exam.</u>  (Ex. D at p. 29:1-31-9). This

argument simply does not make sense and there is a genuine issue of material fact as to whether Ms. Ellis violated the Data Security Policy[2].

### 3. *Defendant's deviation from its own internal policy is evidence of pretext.*

Lastly, ECFMG deviated from its policies when placing Ms. Ellis on administrative leave and terminating her employment.  In accordance with ECFMG's Corrective Action policy, an employee is only placed on administrative leave if that employee poses a threat to themselves or others or behaving in a disruptive and/or unruly manner.  (Ex. H).  Ms. Lehew testified that Ms. Ellis did not pose a threat or act in a disruptive/unruly manner; thus, she should not have been placed on administrative leave the very day returned from FMLA leave under ECFMG's own Corrective Action Policy.  (Ex. G at p. 15:2-5).  In addition, an employee is terminated only after the employee fails to correct a problem or situation despite receipt of a written warning and/or final warning.  (Ex. H).  Here, Ms. Ellis did not receive a written or final warning—nor was she given the opportunity to correct the alleged problems.  (Ex. G at p. 20:4-14).  Instead, she was placed on administrative leave the day she returned; she was not allowed to return to ECFMG; and she was terminated at a hotel 10 days later.  (Ex. C; Ex. D at 50:16-51:2; Ex. G: 11:3-10).  Defendant's deviation from its own policies when dealing with Ms. Ellis raises a genuine issue of material fact as to the true reason for her termination.  *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470 (5th Cir. 2015)(holding an employee's evidence regarding a company's failure to follow its own internal policy, along with circumstantial evidence is enough to get the case to a jury).

### C. ECFMG Interfered with Ms. Ellis' Right to Return

---

[2] In addition, Brent Biggs gave his password to Rich Conn and Gail Foreman.  (Ex. B).  He was not terminated as a result.  (*Id.*).  Also, Sharon Dalberg, the employee that allegedly took Ms. Ellis' password, and inappropriately administered this one exam, was not terminated or reprimanded for using the password.  (*Id.*)  This is yet another example of how Ms. Ellis was treated differently than other employees that did not request FMLA leave; and, one of the many issues of fact in this case.

The FMLA allows eligible employees working for covered employers to take a reasonable leave of absence for medical reasons, without fear of losing their jobs as a result. 29 U.S.C. § 2601(b); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir.2001). The FMLA requires that an eligible employee who takes leave under the FMLA "shall be entitled, on return of such leave –

> (A)    to be restored by the employer to the position of employment held by the employee when the leave commenced; or

> (B)    to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.  29 U.S.C.A. § 2614(a)(1).

### D.  <u>Interference Claim is Based on Strict Liability</u>

An interference, as opposed to a retaliation, claim under the FMLA rests solely on compliance with the statutory rights and does not involve the employer's intent. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). . "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Id*.

As cited in the fact section above, there is overwhelming evidence that Ms. Ellis requested FMLA for a serious health condition, a brain tumor.   The evidence also shows that Ms. Ellis was never restored to her job.  In fact, she was not technically allowed to return to work.  Instead, on her first day back, she was met in her office by Ms. Lehew, Ms. Ambrose and Mr. Paul.  (Ex. C at p. 153:20-24).  After a short meeting, she was placed on administrative leave until she was subsequently terminated 10 days later.  (Ex. C; Ex. G at 11:3-10)(Ms. Lehew confirms that she was placed on leave right after the meeting with management).  Notably, after that meeting, Ms. Ellis was never allowed to return to ECFMG.

Defendant attempts to rely on an unreported Westlaw case to make its argument that

Plaintiff's entitlement claim fails, but Defendant's reliance is misguided.  However, a closer look at *Carroll v. Sanderson Farms, Inc.* reveals that the Court denied Defendant's Motion for Summary Judgment as to Plaintiff's claims of discriminatory discharge based on her disability and her taking FMLA.  Exhibit L, *Carroll v. Sanderson Farms, Inc*., No. H10-3108, 2012 WL 386686, at *23 (S.D. Tex. Sept. 5, 2012)).  In one paragraph, the Court explains that the only reason it granted Defendant's motion as to the entitlement claim, only, is because "the record does not demonstrate that Plaintiff was not restored to the same job." *Id.* at *21.  However, in this case, there is direct evidence that Ms. Ellis was never restored to her job at ECFMG—she walked in the door and was immediately forced into a meeting with management.  After the meeting she never returned to ECFMG.  (Ex. C, Ex. G at 11:3-10).  Thus, because Defendant interfered with Ms. Ellis' entitlement to be restored to her position after she took FMLA leave— summary judgment should be denied on the interference claim.

> *Ellis was denied her right to take the remainder of her FMLA leave.*

Further, the FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any substantive FMLA right". *Ford-Evans v. Smith*, 206 F.App'x 332, 335 (5th Cir. 2006) (quoting 29 U.S.C. § 2615(a)(1)) (internal quotations omitted).  To establish a *prima facie* FMLA interference case, an employee must show that: (1) the employee was an eligible employee; (2) the employer was subject to the FMLA's requirements; (3) the employee was entitled to leave; (4) the employee gave proper notice of the intention to take FMLA leave; and (5) the employer interfered with or denied the benefits to which the employee was entitled under the FMLA.  *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F.App'x 312, 316 (5th Cir. 2013). The term "interference with" includes "not only

refusing to authorize FMLA leave, but discouraging an employee from using such leave". *Bell v. Dallas Cnty.,* 432 F.App'x 330, 335 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b)).

Because of the tremendous stress of meeting, Ms. Ellis requested that she be allowed to go back out on FMLA.  (Ex. C at p. 201:20-202:24).  She was particularly worried that the increase stressed would have a negative impact on her already fragile health.  (Ex. B).  ECFMG refused to allow her to go back on leave.  Instead, Ms. Lehew talk to her "off the record" about administrative leave, wholly refusing to allow her to finish out the remainder of her FMLA leave.  (Ex. C at p. 203:4-6)).  ECFMG's denial and outright failure to allow Ms. Ellis to take the remainder of her FMLA leave was a violation of the FMLA; thus, summary judgment should be denied as to this claim.

## E.  **Ms. Ellis was Terminated Because of Her Disability/Perceived Disability.**

Summary Judgment is also inappropriate because Ms. Ellis can present evidence that ECFMG terminated her employment because of her disability.  In order to demonstrate a *prima facie* case for discrimination Ms. Ellis' initial burden is to show that (1) she is disabled, (2) she was qualified for the job, (3) she was subjected to an adverse employment action because of her disability, and (4) she was replaced by or treated less favorably than someone non-disabled employees.  *See Gowesky v. Singing River Hospital Sys.*, 321 F.3d 503, 511 (5th Cir. 2003).

There is no question that Ms. Ellis suffered from a disability or was perceived to have a disability by ECFMG.  (Ex. C at p. 224:18-20)("I had had a brain surgery or a brain tumor, I don't think that they thought that I was going to be the same).  Ms. Ellis was definitely qualified for her job as she had worked successfully at ECFMG for seven (7) years with any formal disciplinary or performance issues.  (Exs. B, K).   Ms. Ellis suffered an adverse

employment action—she was terminated from her employment from ECFMG shortly after returning from FMLA leave.   Ms. Ellis was replaced by a nondisabled employee, Sandie Pullen.  (Exhibit J, Defendant's Objections and Answers to Plaintiff's Interrogatories)("Sandie Pullen replaced Plaintiff as Center Manager at the Houston Center.  ECFMG is not aware of any disability that Ms. Pullen had or may have…Ms. Pullen has not made an accommodation request, taken leave pursuant to the FMLA…).   Ms. Ellis certainly meets the prima facie elements of her ADA claim.  Moreover, as outlined in greater detail above, Ms. Ellis was certainly treated less favorably than ECFMG's nondisabled employees—evident by her termination while employees like Ms. Lehew and Mr. Biggs were not terminated but "violated" the same policies.   In addition, Ms. Ellis was not allowed to "correct" her "issues" prior to termination in accordance with ECFMG's Corrective Action Policy.  By way of comparison, Mr. Paul also had "issues" and was allowed "coaching" to work on his skills.  (Ex. G at 46:19-48:6).  In fact, Mr. Paul had a "coaching contract" for three to six months to help him correct his issues.  *Id*.  Contrarily, Ms. Ellis did not receive coaching—she was simply terminated without ever being allowed to return to work.  (Ex. G at 48:16-20).

If Ms. Ellis succeeds in establishing a *prima facie* case, the burden shifts back to the employer to establish a legitimate, nondiscriminatory reason for the adverse employment action. *Gowesky*, 321 F.3d at 511.   Ms. Ellis can attack ECFMG's reason through showing either the employer's reason is not true or that her disability was a motivating factor.  *Id*.  As set forth in detail above, Ms. Ellis can establish pretext by pointing to ECFMG's arbitrary decision to investigate the alleged, unsubstantiated claims wholly based on an anonymous letter by an unnamed employee.  She can also show that the claims were not actually investigated by Human Resources or the Director of Operations.  Further, Ms. Ellis can also show that she did not violate

the policies that allegedly led to her termination and that other employees did, in fact, violate the same policies and were not terminated.

Here, Ms. Ellis is not asking this Court to second-guess its alleged business decisions. Rather, Plaintiff asks that this Court see what Defendant actually did and interpret that in a light most favorable to Ms. Ellis as the plaintiff.  Defendant engaged in an unwarranted investigation against Plaintiff and later terminated her employment based on some unsubstantiated, contrived story that Plaintiff violated ECFMG's policies.   Ms. Ellis did not receive any complaints of disciplinary issues or employee complaints until she was bombarded with them on the day she returned from leave. (Ex. B; Ex. C at 230:12-18: Ex. D 17:8-10, 16-19; Ex. K)  Prior to her termination, Ms. Ellis was not allowed to return to ECFMG and certainly was not given an opportunity to respond to these write-ups or to correct/improve her performance. (Ex. G at 20:4-14)

Defendant argues that Ms. Ellis' "violations" justify her allegedly non-discriminatory termination.  However, the termination can not be explained so easily.  Essentially, there are factual disputes surrounding Defendant's claim—which is why Ms. Ellis believes she was targeted because of her disability and in retaliation for taking FMLA leave.  Further, there is a dispute as to the credibility of the investigation, or lack thereof, which led to her termination. ECFMG's proffered explanation for Ms. Ellis' termination is false and unworthy of credence. Contrary to ECFMG's self-serving assertions otherwise, Plaintiff has provided sufficient evidence to cast doubt on Defendant's actions.

Defendant's contends that Plaintiff's belief that she was terminated because of her disability is her own conclusory belief.  Plaintiff's belief is not simply a feeling she had.  She has presented evidence to demonstrate that there was no plan to get rid of her prior to taking leave

(Exhibit K, Email exchange between Ms. Lehew and Ms. Ellis dated June 27, 2012)(stating "there has never been any talk of replacing the Houston manager to my knowledge and you know our process requires that).   Thus, **three months before Ms. Ellis was diagnosed with a brain tumor there was "never any talk of replacing" her, then 10 days after she returns from leave, she is terminated.**   A fact finder could easily find Defendant's proffered reason to be pretext and infer discrimination. A jury deserves to weigh these factors.

## VI. CONCLUSION

Defendant's Motion for Summary Judgment must be denied as to Ellis's claim for FMLA, ADA, and TCHRA claims.   Defendant fails to meet its initial summary judgment burden, under Rule 56, by failing to demonstrate it is entitled to judgment as a matter of law. Ultimately, the issue is whether a fact question exists.   Taking Ellis's evidence as true, she clearly meets her burden at this stage.   For these reasons, Plaintiff asks the Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,



By: _____
Alfonso Kennard, Jr.
State Bar No. 24036888
Southern District No. 897938
Kennard Richard P.C.
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
alfonso.kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR
PLAINTIFF**

**OF COUNSEL FOR PLAINTIFF:**



Keenya R. Harrold
State Bar No. 24039664
Southern District No. 897938
2603 Augusta Drive, Suite 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
keenya.harrold@kennardlaw.com

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on counsel for Defendant via the District Court's ECF system on October 28, 2016.

_____
Alfonso Kennard Jr.