# Exhibit "L"

2012 WL 3866886
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

Revena CARROLL, Plaintiff,
v.

SANDERSON FARMS, INC., Sanderson Farms,
Inc. (Production Division), Sanderson Farms, Inc.
(Processing Division), ANderson Farms, Inc.
(Food Division), ind. and d/b/a Sanderson Farms,
Inc., Defendants.

Civil Action No. H–10–3108.
|
Sept. 5, 2012.

**Attorneys and Law Firms**

G. Scott Fiddler, Attorney at Law, Houston, TX, for
Plaintiff.

Mark R. Flora, Ashlee Mann Ligarde, Austin, TX, for
Defendants.

*OPINION AND ORDER OF PARTIAL SUMMARY
JUDGMENT*

MELINDA HARMON, District Judge.

**\*1** Pending before the Court in the above referenced
action asserting discrimination and retaliation in violation
of the Family and Medical Leave Act ("FMLA"), 29
U.S.C. §§ 2601, et seq., the Americans with Disabilities
Act ("ADA"), 29 U.S.C. §§ 12101, et seq., and the Texas
Commission on Human Rights Act ("TCHRA"),[1] Texas
Labor Code §§ 21.00–21.556, along with state-law claims
for tortious interference with prospective
contract/employment and/or business relations,[2] is
Defendants Sanderson Farms, Inc. (Processing Division)
("Sanderson Farms" or the "Company"), Sanderson
Farms, Inc., Sanderson Farms, Inc (Production Division),
and Sanderson Farms, Inc. (Food Division)'s (collectively
referred to as "Sanderson Farms' " or "Defendants' ")
motion for summary judgment (instrument # 28).[3]

Plaintiff Ravenna Carroll claims that she was discharged
because she had a disability and in retaliation for taking a
medical leave under FMLA from July 28, 2009 to August
12, 2009 to have knee surgery and additional leave from
August 19–23, 2009. Sanderson Farms asserts that it fired
her for poor job performance and multiple employee
complaints about her treatment of them. Plaintiff further
claims that her supervisor Todd Ormon's failure to verify
her employment at Sanderson Farms afterwards tortiously
interfered with her opportunity for employment, in
particular for a human resources specialist position with
the City of Houston.

**Factual Allegations**

Sanderson Farms operates a poultry processing plant in
Waco, Texas. Around April 1, 2008, Todd Ormon, the
Division Manager of the plant, hired Plaintiff Ravenna
Carroll as the plant's Field Employee Relations Manager
("FERM"), the highest ranking human resources position
at the plant. As the FERM, she had a broad spectrum of
responsibilities, including employee relations, benefits,
payroll processing, training, ensuring compliance with
Company's employment policies and applicable
employment laws, and helping employees resolve
problems arising in their work environment or with their
jobs. Plaintiff's Dep., # 32, Ex. 2 at pp. 72–73.

At the end of 2008, Ormon, as Plaintiff's supervisor, rated
Carroll's job performance as "Satisfactory," which
Plaintiff claims was generally the highest score
employees received, and Ormon authorized a pay
increase[4] for her.[5]

Plaintiff took an FMLA leave on July 28, 2009 for knee
surgery and returned to work on Wednesday, August 12,
2009. Because of continuing problems with swelling and
pain, she again went out on FMLA leave on August 18,
2009. When she told Ormon, he purportedly became
irritated and said, "Fine just do what you need to do!"
Plaintiff's physician faxed documentation stating the
medical basis for extending her leave. When Ormon
received the documents, Plaintiff claims that he threw the
papers at another employee, Anniesa Paris, and said, "I
don't need this. I'll take care of it myself." When Plaintiff
heard Ormon was upset, she called him to explain that she
needed another week of leave. He responded, "Do
whatever you need to do!" and hung up on her.[6]

**\*2** Plaintiff returned to work on Monday, August 24,
2009. She was discharged later that day. Ormon said only,
"We decided to make some changes."

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

Subsequently, after Plaintiff had two interviews with the City of Houston for a prospective job opportunity, Ormon interfered with her job search efforts by refusing to provide verification of her former employment with Sanderson Farms. He also delayed in responding to other inquiries for job positions for which she applied.

Plaintiff claims that her discharge was motivated by an alleged disability, her knee injury, and/or retaliation in violation of the ADA and/or FMLA for taking additional medical leave.

### tandard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).

If the movant succeeds, the non-movant must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.' " Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." Cross v. Cummins Engine Co., 993 F.2d 112, 114 (5th Cir.1993). Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp., 477 U.S. at 322–23; Piazza's Seafood World, LLC v. Odom, 448 F.3d

744, 752 (5th Cir.2006). Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.' " Turner v. Baylor Richardson Med. Center, 476 F.3d 337, 343 (5th Cir.2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. Little v. Liquid Air Corp., 37 F.3d 1069, 1079 (5 th Cir.1994); Ramsey v. Henderson, 286 F.3d 264, 269 (5 th Cir.2002). " '[A] subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief.' " Lawrence v. Univ. of Texas Medical Branch, 163 F.3d 309, 313 (5th Cir.1999), quoting Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir.1983). Nor are pleadings competent summary judgment evidence. Little, 37 F.3d at 1075; Wallace v. Texas Tech. U., 80 F.3d 1042, 1045 (5th Cir.1996).

### Relevant Law

#### ADA

*3 Section 12112(a) of the ADA[7] provides that no covered entity shall "discriminate" against a qualified individual with a disability because of the disability of such an individual in regard to, *inter alia,* "the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment." In addition, Section 12112(b)(5) states that the term, "discriminate," includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operations of the business of such covered entity." A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8). A disability is "(A) a physical or mental impairment that substantially limits one or more of the major activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." To state a claim under subsection A, a plaintiff must allege that she has a physical or mental impairment. § 12102(2)(A); 29 C.F.R. § 1630.2(g). A "physical impairment" is "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory,

including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic, skin; and endocrine." 29 C.F.R. § 1630.2(h)(1). Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity. *Chevron Phillips,* 570 F.3d at 614, *citing Toyota Motor,* 534 U.S. at 195. The implementing regulations in § 1630.2(i) provide a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and walking." 29 C.F.R. § 1630.2(i); *id.* Moreover, "to be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform or to be significantly restricted in the ability to perform it." *Id., citing* 29 C.F.R. § 1630.2(j). In deciding whether a person is "substantially limited in a major life activity, the EEOC advises that courts should consider: '(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of resulting from the impairment.' " *Id.* at 614–15, *citing* 29 C.F.R. § 1630.2(j). "[W]hether an individual is disabled under the ADA ... remains an individualized inquiry." *Id.* at 620.

**\*4** An ADA claim may be based on direct evidence[8] of discrimination or, alternatively, on indirect, circumstantial evidence of discrimination. *Bleak v. Providence Health Center,* No. 11–50345, 454 Fed. Appx. 366, (5th Cir. Dec.20, 2011), *citing Daigle v. Liberty Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995). In the latter case, the burden shifting evidentiary framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1073) or modified *McDonnell Douglas* framework, applies. *Id., citing McInnis v. Alamo Community College Dist.,* 207 F.3d 276, 279 (5th Cir.2000); *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004). Here there is no direct evidence that Plaintiff was discharged because of her knee disability or in retaliation for taking FMLA leave, so the *McDonnell Douglas* framework applies.

In a disparate treatment action under the ADA, the plaintiff-employee must show that (1) she is disabled or regarded as disabled; (2) she was qualified for the position; (3) she suffered an adverse employment action[9] because of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. *McInnis,* 207 F.3d at 279–80. If she satisfies this requirement, the burden shifts to the defendant-employer to provide a legitimate, nondiscriminatory reason for the alleged discriminatory act. *Patterson v. Yazoo City, Miss.,* —— F.Supp. —— 2d, Civ. A. No.

5:10–CV–00153–DCB–JMR, 2012 WL 627945, \*13 (S.D.Miss. Feb.24, 2012). Once the employer articulates such a reason, the burden shifts back to the plaintiff-employee to offer sufficient evidence to create a genuine issue of material fact that the employer's reason was either (1) a mere pretext for unlawful discrimination or retaliation or (2) was true, but only one of the reasons for its conduct and another motivating factor is the plaintiff employee's protected characteristic (mixed motive[s] )." *Rachid v. Jack In the Box, Inc.,* 376 F.3d 305, 312 (5th Cir.2004).

A claim of unlawful retaliation under the ADA requires a plaintiff to make a *prima facie* case by showing that (1) he or she engaged in an activity protected by the ADA, (2) he or she suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH,* 179 F.3d 297, 301 (5th Cir.1999), *cited for that proposition in Tabatchnik v. Continental Airlines,* 262 Fed. Appx. 674, 676 (5th Cir. Jan.30, 2008). If the plaintiff succeeds, the employer must present a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the employer succeeds, the plaintiff must submit sufficient evidence showing that the employer's proffered reason is a pretext for discrimination and that but for the protected activity, the adverse action would not have occurred. *Id.* For such a retaliation claim under the ADA, unlike under Title VII, there is no requirement that the plaintiff suffer from an actual disability; the plaintiff need only demonstrate that the plaintiff has a reasonable good faith belief that the statute has been violated. *Tabatchnik,* 262 Fed. Appx. at 676 & n. 1 (failure to prove a disability does not preclude the plaintiff from pursing a retaliation claim).

### TCHRA

**\*5** The ADA and the TCHRA prohibit disability discrimination, and Texas courts follow analogous federal precedent in interpreting the TCHRA. *Bleak v. Providence Health Center,* 2011 WL 6371802, \*2 (5th Cir.2011), *citing NME Hosps., Inc. v. Runnels,* 994 S.W.2d 142, 144 (Tex.1999). Thus this Court applies the legal standards for the ADA to resolve the TCHRA claim. *Id., citing Rodriguez v. ConAgra Prods. Co.,* 436 F.3d 468, 473–74 (5th Cir.2006).

### FMLA

The FMLA applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). To be eligible for FMLA leave, an employee must have worked

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

for the covered employee for at least 1250 hours during the last twelve months. 29 U.S.C. § 2611(2).

The FMLA provides for two types of claims: entitlement or interference claims under 29 U.S.C. § 2615(a)(1) and retaliation claims under 29 U.S.C. § 2615(a)(2). *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 927 (5th Cir.1999). The first provides substantive rights while the other prohibits penalizing an employee for exercising those rights. *Hunt v. Rapides Healthcare System, LLC,* 277 F.3d 757, 763 (5th Cir.2002). Plaintiff asserts both kinds.

The FMLA entitles eligible employees to take up to twelve weeks of leave from work in any twelve-month period for treatment of a "serious health condition" that makes them "unable to perform the functions of [their] position." 29 U.S.C. § 1612(a)(1)(D). A "serious medical condition" requires "either inpatient care in a medical care facility or continuing treatment by a health care provider." *Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 92 (5th Cir.1996), *citing* 29 U.S.C. § 2611(11); *McArdle v. Dell Products, L.P.,* 293 Fed. Appx. 331, 334 (5th Cir. Sept.22, 2008) (The statute entitles eligible employees to twelve work-weeks of leave in a twelve-month period for a number of qualifying events, including a "health condition that makes the employee unable to perform the functions" of his job.). See also 29 C.F.R. § 825.113 ("Serious health condition"). If medically necessary, the employee may take leave intermittently. 29 U.S.C. § 2612(b)(1). The Fifth Circuit requires a health condition that causes or threatens to cause "incapacitation" and makes absence from work "necessary"; a mild to moderate impairment, regardless of which the employee is still viewed as able to perform the functions of her job, is insufficient. *Ford–Evans v. United Space Alliance LLC,* 329 Fed. Appx. 519, 528 (5th Cir. May 14, 2009), citing *Mauder v. Metropolitan Transit Authority of Harris County, Texas,* 446 F.3d 574, 581 (5th Cir.2006), and *Murray v. Red Kap Inds., Inc.,* 124 F.3d 695, 698 (5th Cir.1997). Generally an employer must provide employees returning from FMLA leave with the same position that they previously held or "an equivalent position with equal employment benefits, pay and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

**\*6** The statute protects employees from interference with their entitlement to FMLA leave as well as shields employees who take such leave from discrimination or retaliation for doing so. *Hunt,* 277 F.3d at 763 (5th Cir.2002); *Haley v. Alliance Compressor, LLC,* 391 F.3d 644, 649 (5th Cir.2004). An employer is prohibited from discriminating against employees who have taken FMLA

leave, 29 U.S.C. § 2615(a)(1)-(2)[11]; 29 C.F.R. 825.220. It is also unlawful for an employer to interfere with, restrain or deny the exercise of or the attempt to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). "Interference" is not defined in the statute, but Department of Labor regulations state, "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220.

To make a *prima facie* case for interference with a plaintiff's FMLA rights, a plaintiff must demonstrate that she was entitled to the benefit, i.e., that she suffered from a "serious medical condition that prevented her from working" so that her leave is protected under the statute, and that the benefit was denied. *Ford–Evans v. United Space Alliance LLC,* 329 Fed. Appx. 519, 523 (5th Cir. May 14, 2009); 29 C.F.R. § 825.220(b). Sanderson Farm did not deny Plaintiff's request for FMLA leave, although Plaintiff suggests that Ormon's abrupt and angry reaction to her request for leave discouraged her taking as long a time as her doctor recommended and complaints that he fired her in retaliation for taking FMLA leave. *Bocalbos v. National W. Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir.1998) (FMLA "protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.").

The court should consider temporal proximity between the FMLA leave and the termination in evaluating the causation element in the *prima facie* case only. *Grubb v. Southwest Airlines,* 296 Fed. Appx. 383, 390 (5th Cir. Oct.10, 2008), *citing Mauder,* 446 F.3d at 583 (emphasizing temporal proximity in the *prima facie* context). The Fifth Circuit has found that the kind of temporal proximity that provides sufficient evidence of causality for a *prima facie* case must be "very close." *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 808 (5th Cir.2007), *citing Clark County School Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *see also Everett v. Central Miss., Inc. Head Start Program,* 2011 WL 4716317, *7 & n. 31 (5th Cir. Oct.5, 2011) (noting that three—and four-month periods have been found to be insufficient to establish *prima facie* evidence of causation).

Under the FMLA, the plaintiff does not have to show that the protected activity was the only reason for her termination. *Id.* Moreover, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory right to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Butron*

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

v. Centerpoint Energy, No. 4:10–CV–0369, *8 (S.D.Tex. May 31, 2011), quoting *Arban v. West Publishing Corp.,* 345 F.3d 390, 401 (6th Cir.2003). If the employer demonstrates that it would have discharged the employee for poor performance if the employee had not taken FMLA leave, the employer will not be liable for interference. *Id., citing Throneberry v. McGehee Desh Ctry. Hosp.,* 403 F.3d 972, 977 (8th Cir.2005).

*7 A person who suffers an adverse employment action after seeking medical leave under FMLA may sue for retaliation by showing that (1) she engaged in an activity protected under the FMLA, (2) that she was subjected to a materially adverse employment action, and (3) a causal connection existed between the protected activity and the adverse employment action. *Hunt,* 277 F.3d at 768. Retaliation claims under the FMLA are viewed through the *McDonnell* Douglas burden-shifting framework. *Hunt,* 277 F.3d at 768. To establish a prima facie case of retaliation under the FMLA, the plaintiff must demonstrate that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) she was treated less favorably than an employee who had not requested leave *or* that the adverse decision was made because she took FMLA leave. *Mauder,* 446 F.3d at 583. *In accord, Wilson v. Noble Drilling Services, Inc.,* 405 Fed. Appx. 909, 912 (5th Cir. Dec.23, 2010). If the plaintiff succeeds, the burden of proof shifts to the employer to articulate a legitimate nonretaliatory reason for the employment decision. *Hunt,* 277 F.3d at 768. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the employer satisfies this requirement, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for retaliation. *Hunt,* 277 F.3d at 768. "A plaintiff's prima facie case, combined with evidence that the employer's reason is false, may permit the trier of fact to conclude that the employer unlawfully [engaged in retaliation]." *Reeves,* 530 U.S. at 148.

Where the plaintiff alleges mixed-motive retaliation, i.e., that discrimination was not the only motive for her discharge, but was "a motivating factor," the following evidentiary framework controls:

> (1) the employee must make a *prima facie* case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a

genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or ... (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus.

*Richardson v. Monitronics, Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir.2005).

## Sanderson Farms' Motion for Summary Judgment (# 28)

Sanderson Farms claims that despite the fact that Plaintiff attended training sessions regarding its culture of trust, honesty, and treating others with respect, starting in January 2009 it received numerous complaints on post-training evaluation forms from hourly employees that Plaintiff was rude, unapproachable, and disrespectful toward them. See # 28, Sanderson Farms' Director of Organization Development and Corporate Communications Robin Robinson Decl., Ex. G, Exs. 1 and 2 (hourly employee evaluation responses from training sessions in January and in April 2009). Ormon spoke to Plaintiff about the complaints around February 2009.

*8 Plaintiff claims that Ormon showed her six employee complaints made in evaluations and that she pulled these employees' personnel files and saw all six had been recently written up or suspended by Plaintiff.[12] Insisting that she had not been "mean" and that the hourly employees were simply angry, Plaintiff also claims, in an inadmissible hearsay statement, that Ormon and Training Manager Stacy Webb told her not to worry about the complaints.[13] # 28, Pl's Dep., Ex. A at pp. 123–25; # 32, Ex. 1, Pl.'s Decl. ¶ 9. She denies that Ormon counseled her about the January 2009 complaints, or, for that matter, any other employee complaints. Ormon disagrees and states that although he was not certain about when, he told Plaintiff the complaints were serious and warned her that if her relationship with the employees did not improve, she might be terminated. # 28, Ormon Dep., Ex. B at pp. 114–16; Ormon Decl., Ex. H, ¶ 4.

In April 2009 after training for hourly employees and in May 2009 after intervention interviews with hourly employees, the Company received more complaints specifically about Plaintiff from hourly employees. See # 28, Robinson Decl. Ex. G ¶¶ 4–6, and attached Exhibits of summaries of employee comments on evaluation forms typed up by someone at Sanderson Farms,[14] Ex. 2 and Attachment 111.

On a visit to the Waco plant in early 2009, Jennifer Buster, corporate Human Resources Manager, heard about the complaints and spoke to Plaintiff and reminded her that she was the "face of HR" and needed to be less abrupt toward the hourly employees, though Plaintiff denies that remark. # 28, Pl's Dep., Ex. A at pp. 126–29; Buster Decl., Ex. F at ¶ 7. Buster claims that Plaintiff responded that it was not her style to be "fluff" with the employees. Buster Decl. at ¶ 7. Buster spoke to Ormon and suggested that the training department might be able to provide a Performance Improvement Plan for Plaintiff. Buster Decl., ¶ 8; Ormon Decl. ¶ 5.[15]

Subsequently Ormon sought to involve the training department, through Robin Robinson, Director of Organization Development and Corporate Communications, in improving Plaintiffs' communication and relationship with employees through a performance improvement plan,[16] but before Plaintiff could meet with Robinson (Ex. G, Robinson Decl., ¶ 6), on July 22, 2009, Robinson had to cancel the meeting due the unavailability of a corporate plane and to the fact that Robinson was ill, and it was not rescheduled before Plaintiff went out on FMLA leave and subsequently terminated. Ormon Dep. at pp. 55–57, 59–60. 131–32; Ex. C, Robinson Dep. at pp. 35–38, 83, 97, 104–10, and Exs. 1–5; Robinson Decl. ¶ 11. Plaintiff concedes that Robinson asked her to come to the corporate office in Laurel, Mississippi for additional "training," but claims that Robinson said it was simply "developmental training" that all managers took.[17]

Plaintiff and the Chief Accountant for the Waco plant, Lee Ann Wilson, had a strained relationship and both had complained to Ormon, who also had overheard loud conversations between them that he thought were disruptive to the work place. Ormon Decl., Ex. H at ¶ 6; Ormon Dep. at pp. 57–58, 62–64; Pl. Dep. at pp. 148–49, 151–53. After Plaintiff returned from her first FMLA leave, on August 17, 2009 Plaintiff and Wilson had a dispute over Plaintiff's signing time slips that included holiday pay for her employees. Pl.'s Dep. at 147–50, 154–56; Ormon Dep. at pp. 66–68; Ormon Decl. at ¶¶ 6–7. Ormon called them in for a meeting and counseled both about the need to set a professional example for

their employees and warned them that if they did not work out their differences, they would be discharged; and he placed a memorandum regarding the matter in the personnel files of both women. Ormon Dep. at pp. 61–62, 64–69, and Exs. 12–13; Ormon Decl. at ¶ 7. Ormon further testified that he had not received multiple complaints from hourly employees about Wilson, as he had about Plaintiff; nor was Wilson disabled; nor had she taken FMLA leave. Ormon Decl. at ¶¶ 6 and 10.

*9 While Plaintiff was out on her second FMLA leave, on August 19 and 20, 2009 Sanderson Farms held Staying Union Free training at the Waco Processing plant to counter a serious union organizing effort in that plant. # 28, depositions of the trainers (Veronica Campbell and Vania Nelson), who, as instructed, took notes on what they saw during the training sessions: Ex. D, Campbell Dep. at pp. 11–12, 18–23, 33–34. Exs. 1–4; Ex. E, Vania Nelson Dep. at pp. 12, 16–21, 27–33, 32–36, 40–42. Meta Blanshard, who also conducted the training sessions, consolidated, and typed up notes. During the training sessions, several hourly employees again asserted that they did not like or trust Plaintiff and were uncomfortable going to her with workplace concerns. Campbell Dep. at 25–28, 45–47. At one session some employees grunted and/or rolled their eyes when Plaintiff's name was mentioned. Nelson Dep. at 37–38, 43–47. In another session between five and ten employees stated that Plaintiff had a bad attitude when they came to her office for anything. Campbell Dep. at pp. 30–31. In one session on August 20, ten to fifteen employees made negative comments or gestures regarding her, with one employee describing her as "the crazy lady that no one likes to talk to." Id. at 36–38. Ormon heard about these negative comments, and Sanderson Farm asserts that "this was the straw that broke the camel's back for Ormon," who decided to terminate her for unsatisfactory job performance. Ormon Dep. at 118–20, 98–100, 102, 122; Pl.'s Dep. at pp. 159, 161–63. When she returned to work on August 24, Ormon told her that her employment was terminated.

Sanderson Farms claims that it has an Equal Opportunity Policy Statement and Harassment Policy prohibiting discrimination based on race, age, religion, sex, marital status, national origin, disability and any other legally protected class (# 28, Ex. F, Buster Decl. ¶ 3, Exs. 1–2). It further maintains, with supporting documentation, that its FMLA leave policies are more generous than the statute requires,[18] and that it has a Temporary Salary Continuation Policy that permits salaried employees to remain employed with pay for up to one year even though all FMLA leave rights have been exhausted. Pl.'s Dep., Ex. A at pp. 113–14; Buster Decl., Ex. F ¶¶ 4 and 5 and

Dep. at 103.[19] Moreover, maintains Sanderson Farms, it is absurd to think that Plaintiff, who worked in Human Resources for fifteen years before she was discharged by the Company and had received hours of training regarding the Company's expectation that employees were to be treated with respect and dignity, needed to be told to be nicer to employees to keep her job as head of plant Human Resources.

*11 Moreover, insists Sanderson Farms, Plaintiff's belief that she should have been allowed to complete a performance improvement plan or given some other formal discipline before being discharged is irrelevant because it is well established that "discrimination laws [are not] vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus.,* 119 F.3d 368, 372 (5th Cir.1997); *see also Turner v. Kansas City Southern Ry. Co.,* —— F.3d ——, No. 09–30558, 2012 SL 985575 (5th Cir. Mar. 23, 2012) (" 'we have repeatedly and emphatically stated that anti-discrimination laws 'are not vehicles for second-guessing of business decisions.' ' "(footnotes omitted). *See also Perez v. Region 20 Educ. Serv. Center,* 307 F.3d 318, 325 (5th Cir.2002) (employer's failure to meet with plaintiff to set performance goals may be a management lapse, but it is not evidence of retaliation), *citing Mayberry,* 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). In sum, Sanderson Farms states that there is ample evidence that the discharge decision was supported by legitimate nondiscriminatory reasons, and since there is no competent evidence of pretext, Plaintiff's subjective belief that she was discriminated against based on her disability and her FMLA leave is insufficient to create a genuine issue of material fact for trial.

### Plaintiff's Response (# 32)

The Court does not repeat matters stated above.

Plaintiff maintains that Sanderson Farms had a practice of progressive discipline ("providing more severe warnings or discipline in response to poor performance or misconduct prior to termination to give an employee notice of any alleged performance deficiency and to provide the opportunity to improve") regarding its salaried employees, which she knew from personal experience as custodian of records of Sanderson Farms' personnel records and because she "was often in the loop with regard to discipline provided to salaried employees."[20] # 32 at p. 3, citing Ormon Dep., # 32, Ex.3

at p. 27; Carroll Decl., Ex. 1 at ¶ 5. She asserts that her first and only performance review was on January 2, 2009, when she received the "satisfactory" rating and was given a merit pay raise.

While she acknowledges that on February 9, 2009 Ormon spoke to her about the six hourly employee complaints in evaluations of training sessions in January 1009, she insists that no one at Sanderson ever mentioned employee complaints to her after February 2009, nor have Defendants produced a single e-mail, document or note demonstrating the contrary.[21] She further claims there is "not a shred of paper in [her] personnel file indicating any disciplinary action against her, threatening her with termination, or that her performance was anything less than what was expected of her." # 32 at p. 11; Pl's Dep., Ex. 2 at pp. 174–75. While Ormon claims that he spoke to Plaintiff numerous times about her poor performance, he could not remember how many times or when was the first time, and he did not have any notes of such alleged verbal counselings. Ormon Dep. Ex. 3 at pp. 73–74. Ormon also did not consult with Human Resources before making his decision. Ormon Dep., Ex. 3 at pp. 99–100.[22]

*12 Citing her own Declaration and Deposition testimony (Ex. 1 at ¶ 10; Ex. 2 at pp. 190–91, 198), Plaintiff claims that while she was at Sanderson Farms she became concerned that it was targeting people who went out on FMLA leave and quotes various comments by Sanderson Farms supervisors, all of which are inadmissible hearsay. She claims that because she was aware of the negative attitudes of supervisors toward FMLA leave, she persuaded her doctor to shorten her first leave from six to eight weeks to approximately two, at which time she would return on a light duty basis. Her leave began on July 28, 2009, and she returned to work on August 12, 2009, still limping. Her leg swelled up and she was in pain, so she took the second leave on August 18, 2009. She claims that because she was afraid of losing her job, she persuaded her doctor, who wanted her to take off work for three weeks, to limit it to one. The doctor's office faxed documentation to the employer. When the documents were given to Ormon, Plaintiffs alleges, Ormon threw the papers at human resources employee Anniesa Paris and purportedly said, "I don't need this. I'll take care of it myself."[23] Plaintiff points to Paris' own, admissible statement that Ormon threw the papers at her and that she (Paris) called Plaintiff and told her, "Man he is pissed." Paris Decl., Ex. 4, ¶ 3. When Plaintiff called Ormon to explain why she would be on leave for the additional week, he was angry and short with her, told her "Just do whatever you need to do!,"[24] and hung up on her.

Before the second leave, on August 17, 2009 she and

Exs. 3–5. It insists that each year large numbers of employees take FMLA leave, including under the Company's more generous benefits, and return to work without problems. *Id.;* Pl.'s Dep., Ex. A at p. 119.

Sanderson Farms states that it will assume for purposes of the summary judgment motion that Plaintiff can establish a *prima facie* case for her ADA and FMLA disability discrimination claims, i.e., that she suffers from a disability, that she was qualified for her position, that she was subjected to an adverse employment action, and that she was replaced by or treated less favorably than non-disabled employees. *Crews v. Dow Chemical Co.,* 287 Fed. Appx. 410, 412, No. 08–40122, 2008 WL 2902575, *2 (5th Cir. July 29, 2008).* Therefore the burden of production shifts to Sanderson Farms to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge. *Id.* at 412.

*10 Sanderson Farms further assumes that for purposes of the pending motion that Plaintiff can establish a *prima facie* case of FMLA retaliation, i.e., that she can prove that she was protected under the FMLA, that she suffered an adverse employment action, and that she was treated less favorably than an employee who had not requested leave or the adverse decision was made because she took FMLA leave. *Mauder,* 446 F.3d at 583. Sanderson Farms notes that to satisfy the last element of a *prima facie* case, Plaintiff has only to show a "very close" temporal proximity between her FMLA leave and termination, which exists here, although Sanderson Farms denies that the termination was based on Plaintiff's FMLA leave. *Leal v. BFT, L.P.,* 713 F.Supp.2d 669, 674 (S.D.Tex.2010).

Sanderson Farm maintains that it has met its burden of production by articulating a legitimate, nondiscriminatory reason for the termination decision: management's receipt of multiple employee complaints about Plaintiff on several occasions, including during the union organizing effort. An employee's inability to get along with co-workers, difficulty with impersonal relations, and complaints about an employee from her peers or subordinates are legitimate, nondiscriminatory reasons for termination of employment. *See, e.g., Strong v. University Healthcare Sys.,* 482 F.3d 802, 804–05 (5th Cir.1997) (management's receipt of numerous complaints about a nurse from co-workers and patients was a legitimate, nondiscriminatory reason for discipline and discharge); *Crouch v. J.C. Penney Corp.,* No. 08–40325, 2009 WL 1885875, *402 (5th Cir. July 1, 2009) (employee complaints about manager's rude and unprofessional manner). Thus the burden shifts back to Plaintiff to demonstrate the "ultimate issue of discrimination vel

non." *Keenlan v. Majestic Software,* 407 F.3d 332, 345 (5th Cir.2005), *citing Mayberry v. Vought Aircraft,* 55 F.3d 1086, 1090 (5th Cir.1995). Sanderson Farms insists Plaintiff cannot do so.

Sanderson Farms contends that none of the evidence relied on by Plaintiff constitutes sufficient evidence of pretext to preclude summary judgment. Temporal proximity, alone, though adequate for a *prima facie* case of discrimination, is insufficient to establish pretext at this third stage of the *McDonnell Douglas* framework. *Strong,* 482 F.3d at 807–08. Where the plaintiff fails to rebut the legitimate, nondiscriminatory reasons put forth by the employer for the adverse employment action based on conduct occurring before the protected activity occurred by showing the reasons are pretextual, to preclude summary judgment she must offer evidence from which the jury may infer that retaliation was the real motive. *Woodson v. Scott and White Memorial Hosp.,* 255 Fed. Appx. 17, 20 (5th Cir. Oct.22, 2007). Here Plaintiff was already at risk for termination due to her alleged difficulty in getting along with the hourly employees in the scope of her employment before she took FMLA leave, undercutting the suggestion that the termination was motivated by retaliatory animus. Sanderson Farms argues that the close proximity of the leave and the termination decision are insufficient to create a genuine issue of pretext here. *Id.; McCoy,* 492 F.3d at 562 ("[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive"). "In a retaliation case, 'even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason for making an employment decision.' " *Woodson,* 255 Fed. Appx. at 20, *quoting Mayberry,* 55 F.3d at 1091. Plaintiff must show that Sanderson Farms did not have a good faith belief that the hourly employees' complaints had merit. *Jones v. Continental Airlines,* No. H–04–2246, 2005 WL 2233619, *4 (S.D.Tex.2005); *Hoogstra v. West Asset Management, Inc.,* 560 F.Supp.2d 515, 524 (E.D.Tex.2006). Plaintiff has failed to present additional evidence to show that Sanderson Farms knew or suspected that the employees' complaints were unwarranted, but relied on them anyway as a pretext for termination of Plaintiff's employment or to show retaliatory motive. While Plaintiff argues that the fact that she was not counseled for performance problems before she was terminated supports her claim that her discharge was motivated by her FMLA leave in July and August 2009, Sanderson Farms contends, incorrectly, that it is undisputed that its hourly work rules, including its progressive discipline policy, apply only to hourly workers, not salaried employees including Plaintiff. Pl's

*Carroll v. Sanderson Farms, Inc.*, Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

Wilson had their disagreement, which Plaintiff insists was Wilson's fault because Wilson failed to follow company policy and Texas law regarding holiday time records and checks to terminated employees. She charges Ormon with falsely accusing her of not getting along with Wilson. Even though Wilson testified that the issue with Wilson was not a reason for Plaintiff's discharge (Ormon Dep., Ex. 3 at p. 73), Plaintiff feared that he was seeking to fire her because she had taken FMLA leave, a concern she argues is now justified by her discharge.

During Ormon's deposition, regarding Plaintiff's termination immediately upon her return from her second leave, and before she was able to meet with Robinson as planned, Ormon was asked, "What about your decision-making process with regard to terminating [Plaintiff] made you believe that you needed to terminate her before she was placed on a performance improvement plan? ... What was so urgent about terminating [Plaintiff] that you feel like you didn't have time to put her on a performance improvement plan?" Ormon Dep., Ex. 3 at 122. Even though he had been unable to identify when or how often he had purportedly verbally counseled her regarding the employee complaints, he responded, "I didn't feel like she had done anything to improve the relationship with employees." *Id.*

Ormon discharged Plaintiff when she returned on August 24, 2009 and gave her a check for her pay through the end of the month.

**\*13** In sum, as admissible evidence of discrimination and retaliation, Plaintiff points to her termination the same day she returned from FMLA leave, the absence of any documentation supporting Sanderson Farm's contention that her employment was terminated because of employee complaints, Ormon's anger and outburst when he received her FMLA papers, his hanging up on her when she called to explain the second leave, his failure to consult with Human Resources before deciding to terminate Plaintiff, and his refusal post-termination to respond to calls from the City of Houston for verification of her employment at Sanderson Farms.

Plaintiff suggests that this may not be a pretext case, but a motivating factor (or mixed motive) case, and if so, that she does not need to show pretext, but instead only needs to show that at least one of the reasons for her discharge was her disability and taking FMLA leave. *Smith v. Xerox Corp.*, 602 F.3d 320, 326 (5th Cir.2010).[25]

Plaintiff also complains that Defendants after-the-fact added the allegations about the union organizing effort, which was not mentioned in the EEOC charge or in response to Plaintiff's interrogatories, to their reasons for discharging Plaintiff.[26] # 32, Exs. 7 and 8.[27] She claims that when an employer attempts to add reasons for a discharge after-the-fact, it is evidence of pretext.[28] She contends that Defendants have overstated the nature and number of employee complaints allegedly made against her because only a few refer to her by name or title ("FERM").[29] As noted, Plaintiff maintains that no one at Sanderson Farms counseled Plaintiff about the employee complaints after February 2009. She emphasizes that she had not been terminated when she went on FMLA leave on August 19, 2009, yet Sanderson Farms incredibly asserts that it terminated Plaintiff because of employee complaints received on August 19 and indicating that she had not improved her performance. Ormon admitted there was no way he could know whether the complaints made in the August 19 and 20th training sessions were based on her conduct and need to improve before or after he counseled her (he alleges between May and July), and he has no evidence to support the claim that she had not improved. Ormon Dep., Ex. 3 at 121–22. When facts are presented that "cast doubt" on the reasons stated for a person's discharge, summary judgment on pretext is improper. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 145–46, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir.2002) ("a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation"); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir.2003) (a plaintiff may establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence' ").

Nor is there any documentation, formal or otherwise, to support Sanderson Farms' contention that Plaintiff was terminated because of employee complaints.

**\*14** Furthermore Ormon did not follow the Company's progressive discipline policy with respect to her discharge, as reflected at his deposition:

Q. [H]as Sanderson Farms indicated to you that the practice that they want you to observe, as a general rule, is one of warning employees before they're terminated?"

A. Yes.

Q. And giving them verbal counselings to give them the opportunity to improve before giving them written warnings?

A. Yes.

Q. And giving them written warnings before placing

them on probation?

A. Yes.

Q. And putting them on probation before they're terminated?

A. Not in all instances no.

Q. Or giving them a 30–day or 90–day improvement period?

A. Not in all instances, no.

Q. As a general rule?

A. No.

# 32, Ormon Dep., Ex.3, at p. 27.[30] *See Machinchick v. PB Power, Inc.,* 398 F.3d 345, 354 (5th Cir.2005) (an employer's failure to follow its progressive discipline policy in dealing with plaintiff may be some evidence of pretext). *See also Bell v. Conopco, Inc.,* 186 F.3d 1099, 1102 (8th Cir.1999) (genuine issue of material fact existed in racial discrimination and retaliation actions based in part on evidence that plaintiff's supervisor did not comply with progressive discipline policy"). "In assessing discriminatory motive [in an FMLA retaliation action], a court may also consider other factors, including ... '[d]epartures from the normal procedural sequence ...' " *Hudgens v. Dyn. Dynamics Corp.,* 144 F.3d 151, 168–69 (1st Cir.1998), *citing Reno v. Bossier Parish Sch. Bd.,* 520 U.S. 471, [489] (1997).

In addition, Plaintiff urges, the suspicious timing of her discharge suggests retaliation and discrimination. Even under Sanderson Farms' version of the facts, as of July 20, 2009 Plaintiff was supposed to undergo training by Robinson, but it was postponed because Robinson became ill. # 32, Ex. # 3, tab 23. Although Ormon states the only event relevant to Plaintiff's termination between July 12 and August 24 sessions, he ignores the two FMLA leaves taken by Plaintiff, who was fired the day she returned from the second.

In her declaration (32, Ex. 1, ¶¶ 10 and 26–29), replete with impermissible hearsay, Plaintiff reports other employees on FMLA leave or for medical reasons were terminated. Thus the Court does not rely on these allegations. The Declaration of Anniesa L. Paris (# 32, Ex. 4), which Plaintiff includes to show a pattern and practice of retaliatory treatment, states that Paris took FMLA leave twice, from October 16, 2009 to November 16, 2009 and from December 17, 2009 to April 12, 2010. But she conclusorily asserts, without any evidentiary support, that on return from the first leave, Paris was

written up for falsified reasons and while on the second leave, she was terminated on April 1, 2010 for failure to return to work, purportedly a pretext because she had not been released to work by her doctor and had taken the necessary steps to extend her leave. Such is not competent proof. Similarly the Declaration of Kelly M. LaBarbera, stating that she took FMLA leave twice in the fall of 2011, says she was terminated when she returned to work on the grounds that she was not a licensed Registered Nurse even though Sanderson Farms knew that when she was hired. Sanderson Farm responds that LaBarbera was a Licensed Practical Nurse who was required by state law to be supervised by a Registered Nurse. Tex. Nursing Prac. Act § 301.353; Rule 217.11(2) of the Standards of Nursing Practice. Moreover, and significantly, the two women are not similarly situated to Plaintiff. Not only did they hold different positions from Plaintiff, but Sanderson Farms points out that both were terminated by Veronica Campbell, not by Ormon. It offers to submit additional information, but the Court finds that it is not necessary given the clear disparities evident from what is in the record.

## Defendants' Reply (# 33)

**\*15** Defendants object to the substantial amount of inadmissible hearsay, unsupported conclusory assertions, speculation and misrepresentations of the evidence in Plaintiffs' response. The Court agrees that much of Plaintiff's evidence contains such defects and therefore it has not discussed such inadmissible evidence or it has pointed out where that evidence is not competent. It has not considered the inadmissible evidence in rendering this opinion.

Defendants emphasize that Plaintiff does not argue that the complaints did not exist, but only that they were unjustified. That argument does not show pretext. What she must do but has failed to do is call into question Ormon's good faith reliance on the complaints in deciding to fire her.

As for Ormon's failure to respond to the City of Houston's request for employment verification after she was terminated, Defendants point out that Ormon had no legal obligation to provide an employment reference. Texas Labor Code § 103.005. Moreover Plaintiff has not provided any admissible evidence that Ormon received any communications from the City of Houston or whether he responded or provided any information. There is no evidence that Ormon refused to respond to a request for an employment reference in retaliation for her using

FMLA leave.

### Plaintiff's Surresponse (# 34)

Plaintiff argues that statements made by employees of the Defendant during the employment relationship concerning a matter within the scope of employment are an exception to the hearsay rule as an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(D). She asserts that it is undisputed that at the time the statements were made, the speakers were employees of Sanderson Farms and the statements concerned matters within the scope of their agency or employment. To Defendants' challenge that they are self-serving, Plaintiff questions how they can be when neither witness is a party to this action and nor has a stake in the outcome. Nor do Defendants cite any authority for excluding testimony because it is allegedly "self-serving." Furthermore they charge that many of Sanderson Farms' objections are aimed at the credibility of the declarants, an issue for the jury.

Plaintiff summarizes that performance appraisals and compliments on her job performance (most of which are inadmissible hearsay), the lack of progressive discipline or documentation of counseling, combined with her termination on the day she returned from FMLA leave are sufficient to create a genuine issue of material fact for trial.

Finally Plaintiff argues that Defendants never moved for summary judgment on her Plaintiff's FMLA claim that Defendants retaliated against her by (1) failing to return Plaintiff to the same position that she had before taking leave and (2) interfering with her attempts to find a new job after termination. First Amended Complaint, # 3, p. 5, ¶ 20 ("Carroll incorporates the factual allegations recited above and would show Defendants' conduct constitutes violations of the FMLA in that Defendants interfered with Carroll's rights under the FMLA and retaliated against her by failing to return her to the same position she had before taking leave, terminating her and interfering with her attempts to find a new job after termination."). Challenging Defendants' argument that the same evidence supports their attack on Plaintiff's FMLA claim as her defamation claim, Plaintiff further asserts that the standard for proving a defamation claim and an FMLA retaliation/interference claim are not the same and that Defendants' reliance on Section 103.005 of the Texas Labor Code is misplaced because it says nothing about whether failure to provide an employment reference under the FMLA, a federal law, can be retaliatory.

### Court's Decision

#### Objections to the Evidence

*16 "Hearsay" is "a statement that ... the declarant does not make while testifying at the current trial or hearing .. and a party offers in evidence to prove the truth of the matter asserted in the statement." Federal Rule of Evidence 801(c)(1) and (2). Plaintiff submits numerous statements quoting or summarizing what she was told by someone else; if that other person were to testify, the statement would be admissible. Ballard v. Gautreaux, ——F.3d ——, Nos. 10–31266 and 11–30306, 2012 WL 851630, *4 ((5th Cir. Mar. 15, 2012). Plaintiff argues that a number of the challenged statements are admissible as an exception to the hearsay rule for statements made by a party opponent under Rule 801(d)(2)(D) ("The statement is offered against an opposing party and ... was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."). This Court disagrees that the opposing-party's-statement exception applies in these instances. Federal Rule of Evidence 801(d)(2)(D) requires that a statement by a party's agent or servant be made within the scope of his or her employment. Where the declarant was not involved in the decision to terminate her, his comments do not fall within the party opponent exception because they concern matters outside the declarant's scope of employment. Ramirez v. Gonzales, 225 Fed. Appx. 203, 210 (5th Cir.2007), citing Breneman v. Kennecott Corp., 799 F.2d 470, 473 (9th Cir.1986) (finding statements not within the scope of employment when declarants relating what decision maker said were not involved in the company's discharge of plaintiff). Because Ormon was the only employee involved in Plaintiff's discharge decision, the reported statements of other Sanderson Farms employees not within the scope of their employment are hearsay. See, e.g., Grubb v. YSK Corp., 401 Fed. Appx. 104, 110–11 (6th Cir. Nov.18, 2010). The evidence does not show that anyone besides Ormon was involved in the decision to terminate Plaintiff.

In employment discrimination cases, moreover, evidence relating to the employer's treatment of employees "similarly situated" to the plaintiff, i.e., comparator evidence, is relevant to prove an employer's discriminatory intent or motive in discharging plaintiff, i.e., that there was a pattern or practice of discrimination, or that the employer implemented policies that encouraged or permitted discrimination. Heyne v. Caruso, 69 F.3d 1475, 1479–80 (9th Cir.1995), citing Fed.R.Evid.

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

404(b)(2) ("Evidence of other crimes, wrongs or other act ... may be admissible for ... proving motive ...."). "An employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.' " *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir.2009), *quoting Little v. Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir.1991). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable employment histories." *Id.*, *quoted in Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 2012 WL 985575, *3 (5th Cir. Mar.23, 2012). Nevertheless the Fifth Circuit has

*17 made clear that "nearly identical" is not "synonymous with 'identical.' " " .... Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." "For example ... [e]ach employee's track record at the company need not comprise the identical number of identical infractions albeit these records must be comparable." "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation different from another's. " "The relevant perspective is that of the employer at the time of the adverse employment decision." [citations omitted]

*Turner*, 675 F.3d 887, 2012 WL 985575, at *4, citing and quoting *Lee*, 574 F.3d 253, 260–61 & n,.25 and 27, and *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

Moreover "a pattern or practice of discriminating" against a particular protected group or characteristic does not consist of "isolated or sporadic discriminatory acts by the employer." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir.2000), *citing Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 875, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). " '[I]t must be established by a preponderance of the evidence that '[the impermissible] discrimination was the company's

standard operating procedure-the regular rather than the unusual practice.' " *Id., citing id.* "Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." *Id., citing Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1221 (5th Cir.1995), *overruled on other grounds, Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "[T]estimony from ... employees who had different supervisors than plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from plaintiff's termination cannot be probative of whether [the protected characteristic] was a determinative factor in the plaintiff's discharge. *Id.* at 302 & n. 2. *See Jackson v. Univ. of Tex. M.D. Anderson Cancer Center*, 172 F.Supp.2d 860, 878 (S.D.Tex.2001) (A plaintiff ... can introduce anecdotal evidence of discrimination against other employees to establish that a defendant's reasons are a pretext for discrimination. However, to be admissible, such evidence must relate to employees who are similarly situated to the plaintiff."), *citing Wyvill*, 212 F.3d at 302.

*18 This Court finds that none of the employees that Plaintiff points to as possible comparators meets the requirements to be viewed as similarly situated to her.

Finally, Defendants have complained that Plaintiff's declaration and deposition testimony are "self-serving." The Fifth Circuit, addressing affidavits, has opined about self-serving testimony:

A party's own testimony is often "self-serving," but we do not exclude it a incompetent for that reason alone. *See Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 513 (5th Cir.1999), *superseded by* Fed.R.Evid. 103(a) *on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir.2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient. Much evidence is self-serving and, to an extent, conclusional.") Instead an affidavit based on personal knowledge and con taining factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment-including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial-a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts."); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir.2000) ("[A] 'party's own affidavit, containing relevant information

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

of which he has firsthand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment,' " (quoting *Cadle Co. v. Hayes,* 116 F.3d 957, 961 n. 5 (1st Cir.1999)); *Harris v. J.B. Robinson Jewelers,* 627 F.3d 235, 239 (6th Cir.2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it.")' *Williams v. Shields,* 77 Fed. Appx. 501, 503 (10th Cir.2003) (unpublished) ("As long as an affidavit is 'based upon personal knowledge and sets forth facts that would be admissible in evidence,' ... such averment of a party is legally competent to oppose summary judgment, notwithstanding its inherently self-serving nature." (internal citation omitted)) If all "self-serving testimony" were excluded from trials, they would be short indeed.

*C.R. Pittman Const. Co. v. National Fire Ins. Co. of Hartford,* 2011 WL 5031414, *3 (5th Cir. Oct.24, 2011). The Court has followed these standards in determining which evidence is admissible in ruling on the motion for summary judgment.

### Tortious Interference

To prevail on a common-law claim for tortious interference with prospective contract or prospective business relations, a plaintiff must show (1) a reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of defendant's interference. *Faucette v. Chanto,* 322 S.W.3d 901, 914 (Tex.App.-Houston [14th dist.] 2010) (tortious interference with prospective contract); *Hino Elec. Holding, L.P. v. Constellation NewEnergy, Inc.,* No. 13–09–00657–CV, 2011 WL 1935616, *3 (Tex.App.-Corpus Christi May 19, 2011) (tortious interference with prospective business relationship).

*19 Chapter 103 of the Texas Labor Code addresses "Disclosure by Employer of Information Regarding Certain Employees or Former Employees," and "provides employers with immunity from civil liability in connection with the provision of job-related information about a former or current employee to a prospective employer of that employee." Phillip R. Jones, Jennifer A. Youpa, and Tracey S. Calvert, *Employment and Labor Law,* 53 SMU L.Rev. 929, 962 (Summer 2000). Section

103.003(a) states, "An employer may disclose information about a current or former employee's job performance to a prospective employer of the current or former employee on the request of the prospective employer or the employee." The employer who provides job performance information cannot be held civilly liable for disclosing such information unless the plaintiff proves by clear and convincing evidence that at the time the employer made the disclosure, the employer knew the information was false or that the "employer made the disclosure with malice or in reckless disregard for the truth of the information." *Id., citing* Texas Labor Code § 103.004(a). Nevertheless under the statute, an employer is not required to provide an employment reference. *Id., citing* Texas Labor Code § 103.005 ("This chapter does not require an employer to provide an employment reference to or about a current or former employee."). Thus Plaintiff cannot assert a claim for tortious interference based on a prior employer's failure or refusal to provide such a reference because, *inter alia,* that conduct was not unlawful.

### Discriminatory Discharge Claims Under the FMLA and the ADA (and TCHRA)

Defendants have stated they will not contest that Plaintiff has a *prima facie* case of discrimination based on her disability under the ADA and her taking of leave under the FMLA.

Defendants have articulated a legitimate, nondiscriminatory reason for firing Plaintiff, i.e., hourly employee complaints about her. Plaintiff has not shown that these complaints were pretextual. Thus the Court examines whether they are only one reason for the discharge and that unlawful discrimination based on her disability and FMLA leave was another motivating factor.

While a substantial amount of the evidence is inadmissible, there are several key circumstances that lead the Court to find genuine issues of material fact and deny summary judgment based on discrimination.

First, while the summaries of employee complaints typed up from trainers' notes by different trainers and employees of Sanderson Farms suggest questions of authenticity and correctness, the Court also finds that in view of the total list of employee comments, the number critical of Plaintiff is not substantial.

Second, Defendants have emphasized the as the plant's FERM, Plaintiff is an important person at the Waco plant, that she agrees that she is important, and that the employees think she is important. Yet Plaintiff has

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

argued, and Defendants have failed to respond, that there is not a single document in her personnel file that evidences that she was every counseled or disciplined for hourly employee complaints about her or even reflecting any problems with the hourly employees.[31]

*20 Third, Ormon claims that after he became aware of most of the employee complaints, he sought to arrange for a performance improvement plan for her. Moreover he did not discipline her before she went on not only the first FMLA leave, but also the second. Nevertheless while she was out on the second leave and without notice to Plaintiff, he abandoned that approach before she even knew about the complaints arising in the May anti-union training session and she had no opportunity to respond to the complaints asserted at that session. Yet the deposition of Robin Robinson made clear that individual performance improvement plans were time-consuming and expensive for the Company and were not provided for employees in trouble or to be terminated. *See* footnote 16. Furthermore, the depositions of the two trainers at these last sessions (Campbell and Nelson) reflect that they were ordered to observe and take notes on the comments and body language of the employees being trained, that Campbell and Nelson were completely untrained in such matters, and that a number of employees there were generally disgruntled about problems at the Waco plant. Moreover, the purported summaries of the complaints are of questionable reliability: Defendants did not show, nor do the undisputed facts suggest that they qualify as a business records exception to the hearsay rule under Federal Rule of Evidence 803(6).[32] but were typed up from Nelson and Cambell's subjective notes, which in turn were thrown away.

Fourth, highly conspicuous here, is the timing of her discharge, on the day of her return from her second leave of oneweek's duration, only six days after returning from her first two-week leave from July 29, 2009 to August 12, 2009, after she persuaded her doctor to allow her to return to work in less than half the time he recommended. This temporal connection is highlighted by admissible portions of human resources employee Anniesa Paris' Declaration dealing with Plaintiff's second leave, # 32, Ex. 4, ¶ 3:

> In August 2009, Ms. Carroll went on FMLA leave. Ms. Carroll contacted me to let me know her doctor would be faxing documentation to Sanderson Farms setting forth the medical basis for extending her leave. Upon receiving the documentation, I brought it to Mr. Ormon, who was

in Michael Yoakum's office. When I handed the documents to Mr. Ormon, his face immediately turned red, and he angrily grabbed the papers from my hand, threw them at me.... I left Mr. Yoakum's office and called Ms. Carroll from my phone and told her "Man he is pissed!" and relayed to her what happened.

There is no evidence in the record that Plaintiff previously took excessive leave or absences.

Accordingly, the Court finds that the there are genuine issues of material fact as to whether Defendants intentionally discriminated against Plaintiff at least in part based on her disability (which the evidence shows was a recurrent knee problem) and for taking FMLA leave.

### FMLA Entitlement Claim

*21 Regarding Plaintiff's FMLA claim in her First Amended Complaint, # 3 at p. 5, ¶ 20), the record does not demonstrate that Plaintiff was not restored to the same job, as FERM, when she returned from leave, but only that she was discharged that same day. Thus she has no entitlement claim based on a failure to restore her to the same or an equivalent positions under 29 U.S.C. § 2614(a)(1).

### Post–Termination Retaliation Claim under Federal Statutes

The Court agrees with Plaintiff that in their motion for summary judgment Defendants have not adequately addressed on the merits her claim for post-termination, retaliatory interference with her attempts to find a new job under the ADA and the FMLA. The Court agrees that Texas Labor Code § 103.005 is not relevant to a retaliation claim brought under the federal employment discrimination statutes. A number of federal courts have held that where the plaintiff-employee's complaint has clearly alleged that the defendant refused to provide her with a post-employment reference letter in retaliation for filing an employment discrimination charge with the EEOC, if proven, such conduct would amount to unlawful discrimination under the federal statutes. *Pantchenko v. C.V. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir.1978) (Title VII)[33]; *Meyer v. California & Hawaiian Sugar Co.*, No. C78–2634–WWS, 1979 WL 267, *5 (N.D.Cal. July 23, 1979); *Sparrow v. Piedmont Health Sys. Agency, Inc.*, 593 F.Supp. 1107, 1119 (M.D.N.C.1984) (agency's

retaliatory refusal to provide a letter of recommendation violated Title VII); *Atkinson v. Oliver T. Carr Co.,* Civ. A. No. 85–1950, 1986 WL 6997, *3 (D.D.C. Apr.22, 2986)* (the D.C. Circuit Court of Appeals "has recognized that adverse treatment of a former employee can constitute grounds for a retaliation claim," including failure to provide a letter of recommendation); *Tozzi v. Joliet Junior College,* No. 88 C 10385, 1989 WL 96447, *4 (N.D.Ill. Aug.10, 1989); *Beckett v. Prudential Ins. Co. of America,* 893 F.Supp. 234, 240 (S.D.N.Y.1995) ( "[R]efusals to furnish recommendations ... may be discriminatory practices if done in direct retaliation for a former employee's opposition to an unlawful employment practice."); *Hopkins v. Bridgeport Bd. of Educ.,* ——F.Supp.2d ——, No. 3:09CV1143 VLB, 2011 WL 2899086, *6 (D.Conn. July 15, 2001)* (noting that the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), "broadened the spectrum of conduct that can qualify as an adverse employment action to include post-employment conduct, so that an adverse employment action in the retaliation context need only to be harmful to the point that [it] is likely to dissuade a reasonable employee from making or support[ing] a charge of discrimination"). *See also* 1 Fair Employment Practices § 10:79 ("Refusing to provide references) (database updated March 2012) ("It is illegal for an employer to refuse to provide a former employee with a reference for a reason that is a prohibited basis for adverse employment actions under any of the laws against employment discrimination."). *See also Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972)* (Fair Labor Standards Act) ("The possibility of retaliation, however, is far from being 'remote and sFirst, it is a fact of business life that employers almost invariably require prospective employees to provide the names of their previous employers as references when applying for a job. Defendant's former employees could be severely handicapped in their efforts to obtain new jobs if the defendant should brand them as 'informers' when references are sought....").

**\*22** Nevertheless, Sanderson Farms does argue that Plaintiff's failure to exhaust administrative remedies as to her retaliation claims precludes this Court's exercise of jurisdiction over them. Plaintiff asserts two retaliation claims under the ADA and the FMLA: (1) that she was fired because of her disability and/or taking of FMLA leave; and (2) that after she was terminated, Ormon refused to provide an employment verification to prospective employer the City of Houston. This Court concludes that under Fifth Circuit law,[34] both retaliation claims under the ADA and FMLA are barred by failure to

exhaust administrative remedies timely.

No one disputes that Plaintiff was discharged on August 23, 2009. Plaintiff filed her charge of discrimination with the EEOC on or around December 31, 2009. First Amended Complaint, # 3, p. 8, ¶ 39. Plaintiff's EEOC charge (No. 460–2010–010430) did not contain either retaliation claim. # 32, Letter dated August 10, 2010 to Doris Brown, Investigator for EEOC, from law firm of Constangy Brooks & Smith in Austin, Texas regarding Plaintiff's EEOC charge, Ex.7.

In *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981), the Fifth Circuit concluded, "[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim [in federal court] growing out of an earlier charge; the court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *See also Gottlieb v. Tulane Univ. of La.,* 809 F.2d 278, 284 (5 th Cir.1987)* (applying *Gupta*). Where the retaliation occurred *before* the plaintiff filed her EEOC charge, she must exhaust her administrative remedies by including the retaliation claim in her initial charge. *Eberle v. Gonzales,* 240 Fed. Appx. 622, 628 (5th Cir. May 18, 2007)* (addressing ADEA claim) (dismissing retaliation claim because the *Gupta* rule and its rationale are not applicable where the retaliation occurred *before* the filing of the EEOC charge). The *Eberle* panel explained the distinction: "It is in the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case, a double filing that would serve no purpose except to create procedural technicalities." 240 Fed. Appx. at 628. *See also Sapp v. Potter,* 413 Fed. Appx. 750, 752 (5th Cir. Feb.22, 2011)* ("The *Gupta* exception [to the exhaustion requirement] allows a plaintiff to proceed in district court on the unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court [previously]. Because the *Gupta* exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone.").

Here, Plaintiff's claim of retaliatory discharge on August 23, 2009 arose before she filed her EEOC charge on December 31, 2009. Thus it had to be included in her EEOC charge, but was not. 240 Fed. Appx. 628. Thus it must be dismissed.[35]

**\*23** Plaintiff has not provided the date or time period during which Ormon refused to provide employment verification to the City of Houston. Nevertheless, it is

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

clear that this refusal occurred after her discharge, but it did not arise out of the discharge; instead it is an independent claim based on new factual allegations of his conduct post-termination. Thus it, too, does not fit into the *Gupta* exception for a claim involving retaliation "growing out of [the filing of] an earlier charge"; therefore it had to be exhausted in a subsequent EEOC charge, but was not.

Thus both retaliation claims are barred for failure to exhaust administrative remedies.

Accordingly, the Court

ORDERS that with her consent, Plaintiff's defamation claim is DISMISSED with prejudice. In addition, the Court

ORDERS that Plaintiff's Texas common-law claims for tortious interference are DISMISSED because Ormon's failure or refusal to provide employment verification is not only not unlawful, but is permissible under Texas law.

The Court further

ORDERS that Defendants' motion for summary judgment is DENIED as to Plaintiff's claims of discriminatory discharge based on her disability and her taking of FMLA leave, but GRANTED as to Plaintiff's entitlement claim that she was not restored to her prior position after returning from leave. Finally, the Court

ORDERS that Plaintiff's claims of retaliation under the ADA, the FMLA, and the TCHRA are DISMISSED for failure to exhaust remedies.

SIGNED at Houston, Texas, this *14th* day of *September,* 2012.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

Footnotes

1    The TCHRA, *inter alia,* prohibits employment discrimination based on disability. Tex. Labor Code § 21.052. Because the Legislature intended the TCHRA "to correlate state law with federal law in the area of discrimination in employment," case law interpreting the ADA is authoritative as to corresponding provisions of the TCHRA. *Rodriguez v. ConAgra Grocery Products Co.,* 436 F.3d 468, 473–74 (5th Cir.2006).

2    Plaintiff Ravenna Carroll originally sued for defamation, but stated in her response to the motion for summary judgment that she did not oppose dismissal of that claim. # 32 at 13. Thus the Court does not address it in this document other than to dismiss it.

3    Sanderson Farms, Inc., Sanderson Farms, Inc (Production Division), and Sanderson Farms, Inc. (Food Division) reserve the right to assert that they did not employ Plaintiff and are not proper parties to this action.

4    Defendants state the raise was five percent; Plaintiff states that it was nine percent, five percent of which was prorated from her April 8, 2008 start date and a merit pay increase because of the performance review.

5    Sanderson Farms emphasizes that this rating and pay raise were given before Ormon began receiving complaints from hourly employees about Plaintiff in January 2009. # 28 at p. 24.

6    Ormon denies that he was angry about Plaintiff's leave or ever made these remarks. # 28, Ormon Decl., Ex. H, ¶ 8. Moreover Sanderson Farms argues that these remarks are "at the very most, ambiguous and could just as easily be construed to mean that Ormon was encouraging Plaintiff to take the time off she needed to get better." # 28 at p. 27. It claims that these "not expressively negative remarks" are insufficient to show discriminatory animus or establish pretext.

7    Because the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553, and corresponding TCHRA amendments. H.R. 978, 81st Leg., Reg. Sess (Tex.2009), only apply to actions occurring since September 1, 2009, they do not apply here.

8    "Direct evidence is evidence that, if believed, proves the fact of discriminatory [or retaliatory] animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir.2002), *citing Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir.1995). Where an employee submits direct evidence of discrimination, the burden shifts to the employer "to prove by a preponderance of the evidence that the same decision would have been

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

made regardless of the discriminatory animus." *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 992 (5th Cir.2005).

[9] "An adverse employment action" encompasses only ultimate employment decisions such as hiring, granting/denying leave, discharging, promoting or compensating. *McCoy v. City of Shreveport,* 492 F.3d 551, 559 (5th Cir.2007).

[10] The mixed motive analysis was originally developed for Title VII claims. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 98–102, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The Fifth Circuit has extended it to FMLA retaliation cases and to ADA claims. *Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 333 (5th Cir.2005); *Pinkerton v. Spellings,* 529 F.3d 513, 518–19 (5th Cir.2008).

[11] Section 2615(a) provides in relevant part,
(1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
Section 2615(a)(2) prohibits discrimination or retaliation against an employee for exercising his rights under the statute. *Bell v. Dallas County,* No. 10–10317, 2011 WL 2672224, *2 (5th Cir. July 8, 2011), *citing Hunt v. Rapides Healthcare Sys., L.L.C.,* 277 F.3d 757, 763 (5th Cir.2001).

[12] Sanderson Farms argues that this evidence, even if assumed to be true, is not relevant because Ormon's undisputed testimony was that he did not consider the discipline to be relevant since Plaintiff was not a disciplinary decision maker for these hourly employees and none of the employees' comments referred to disciplinary decisions. # 28 at p. 24; *Wilson v. Noble Drilling Servs., Inc.,* 405 Fed. Appx. 909, 914 (5th Cir. Dec.23, 2010) (plaintiff failed to show employer's reason for firing him was false where promotion and raise occurred before the reasons for his discharge occurred).
Plaintiff responds that the complaints were unjustified, that they were an inevitable part of being the disciplinary head of Human Resources, that the comments were not directed only at her, and in part that they were likely the result of her predecessor's failure to enforce company policies. # 32 at p. 4, citing her own Decl., # 32, Ex. 1, ¶ 9.
Sanderson Farms responds that the "lax enforcement" by her predecessor is belied by nearly a year and a half after Plaintiff took over the position, the employees were complaining about her. # 33 at p. 7. It also objects that though claiming access to employee personnel files as custodian of those records, Plaintiff is unlikely to have actually reviewed the entire contents of a significant number of the thousands of them, nor would there be any way for her to determine simply by looking at a personnel file that discipline was warranted but not given.

[13] Sanderson Farms replies that Ormon testified that he did not take into consideration whether the January 2009 employees had been recently disciplined when he made the termination decision because none of the complaints asserted unfair discipline. # 33 at p. 6. As for the reassurance by Stacy Webb, Sanderson Farms points out that Webb was not based in the Waco plant, that his alleged statement is hearsay, and that there is no evidence that he was involved in the termination decision. *Id.* at p. 7.

[14] Robinson Dep., Ex. C at p. 92; Campbell Dep., Ex. D at pp. 18–20, 24, comments typed up "verbatim" from trainers' notes and notes were thrown away; Nelson De., Ex. E at pp. 17–19 (same).

[15] Plaintiff rejects Ormon's and Buster's claim that they spoke to Plaintiff about being less abrupt with hourly employees, and argues that for purposes of the summary judgment motion, Plaintiff's version must be accepted as true. Plaintiff ignores the Declarations of Buster (# 28, Ex. F) stating that she spoke to Plaintiff about the employee complaints, and of Robinson (# 28, Ex. G), stating that she gave proposed dates to Ormon for a two-day meeting with Plaintiff to discuss possibly setting up a training program for her, and that Plaintiff selected July 22 and 23, 2009.

[16] During her deposition, in describing the various kinds of training she does for Sanderson Farms, Robinson was asked about plans designed to meet the deficiencies of particular employees. # 28, Ex. C at pp. 35–36. Robinson testified that
we do have something called a performance improvement plan. It's where an employee, for whatever reason, it—their—whoever they report to feel that they need some additional training, maybe on company culture, or whatever ... And that particular training is—is a huge investment of time for my department, and me, if I'm doing it, and also money....
And it-it's not for an employee that is in trouble or is going to be determined. The performance improvement plan would be for someone that the company's investing time and money in to help that employee get better in a particular area.
*Id.* The Court believes that "determined" should be "terminated" from this context and subsequent ones. See, e.g., *id.*

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

at p. 38, ll. 10–17:
A.: So it is an investment of time and money. So it's not—it's not looking to terminate someone.
Q.: Why do you think that it's a good policy to try to help employees improve their performance rather than terminating them immediately?
A.: Well, our company culture is about treating people right. It's about helping people be-be the best that they can do in their-in their environment, in their workplace.

[17] Plaintiff states that Robinson did not mention that any performance issues or complaints from employees were the reason for the training, and she asserts that "[n]o one ever suggested to [her] the training was any form of discipline or the result of any complaints from employees." # 32 at p. 6 and nn. 24 and 25. Robinson's Declaration does not contradict this statement.

[18] Sanderson Farms' policy offers FMLA leave to employees who have been employed for only 90 days, rather than a year, allows them to stay out on leave for 13 weeks (rather than twelve), grants leave extensions to those who need more time, and for salaried employees, permits them to remain on leave for up to a year with pay.

[19] Sanderson Farms cites to Plaintiff's deposition, but it does not support this statement. Moreover Plaintiff argues that Ormon failed to follow the Company's progressive discipline policy in her case. # 32 at p. 19; Ormon Dep., Ex. 3 at 27. *See, e.g., Wilson v. Noble Drilling Servs., Inc.,* 405 Fed. Appx. 909, 914 (5th Cir. Dec.23, 2010) (although an employer's failure to follow its own disciplinary policy may constitute evidence of pretext, the panel found that the plaintiff did not argue that it was the employer's policy to discipline employees before firing them, no less direct the court to supporting evidence).

[20] Defendants object to her claim that an unwritten mandatory progressive discipline policy was in place for salaried employees based on nothing more than her access to employee personnel files and sometimes being in the loop" on disciplinary decisions. She proffers no evidence of such a policy being issued to any salaried personnel under similar circumstances nor distinguishes her own situation from that of other salaried employees terminated without prior discipline. # 33 at p. 13.

[21] As noted above, on summary judgment Defendants are not required to produce such evidence.

[22] The Court does not rely on the hearsay statements referenced by Plaintiff in support.
Defendants object to Plaintiff's "blatant" misrepresentation that Ormon did not talk to anyone in the corporate human resources department before making the termination decision and cite his deposition testimony, # 34, Ex. 3 at p. 5:
Q. Did you talk to Jennifer [Buster] before you told Revena she was being terminated?
A. I don't remember if I did or not. I just remember telling my direct report.
Q. Is there any reason why you wouldn't talk to somebody in human resources before making that decision?
A. Well, it was my decision, and I felt like that my—the person I reported to needed to talk to....
Q. Did you talk with Jennifer Buster after you terminated Revena, about why you terminated her?
A. I'm sure I did. I don't remember, you know, the exact conversation.
Plaintiff argues that Plaintiff's contention that Ormon did not consult with Buster before discharging her is a reasonable inference from the quoted testimony, an inference that Plaintiff is entitled to on summary judgment.

[23] This statement is hearsay in the documents submitted (Paris's Declaration, Plaintiff's Dep., and Plaintiff's Decl.).

[24] Also hearsay.

[25] This Court observes, "As recognized by the plurality in *Price Waterhouse [v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) ], a case need not be 'correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court' because the distinction often will not be known to a plaintiff prior to discovery. Instead '[a]t some point in the proceedings, of course, the *District Court* must decide whether a particular case involves mixed motives.' " *Smith v. Xerox,* 602 F.3d at 333. At trial stage when the plaintiff must produce evidence of discrimination based on the protected characteristic, after hearing the evidence of both sides the district court must decide what legal conclusions the evidence could reasonably support and instruct the jury accordingly. *Id.* "Put another way, if the district court has before it substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role in the challenged employment action, the court may give a mixed-motive instruction." *Id.*

Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

26    Sanderson Farms replies that the union activity was the reason for the August 2009 training sessions, not the reason for Plaintiff's termination. # 33 at pp. 5–6.

27    Defendants respond that they have always maintained that Plaintiff was terminated as a result of hourly employees' complaints about her. While none of the documents mentions union activity, union activity was the cause for the August 2009 training sessions, not the reason for Plaintiff's termination. They insist Plaintiff cannot show that the factual basis for her termination was untrue, and thus cannot establish pretext on that ground.

28    See, e.g., King v. Life School, Civ. A. No. 3:10–CV–0042–BH, 2011 WL 1562964, *6 (N.D.Tex. Apr.26, 2011) (" "shifting and changing justifications which indicate an after-the-fact rationalization for the former employee's termination could be sufficient evidence of pretext"), citing EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir.1994) (given employer's changing reasons for layoff, "a reasonable juror could infer that the explanations given by Ethan Allen at trial were pretextual, developed over time to counter the evidence suggesting age discrimination uncovered by the state investigation"); DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir.1993) (pretext inquiry takes into consideration "whether the putative nondiscriminatory purpose was stated only after the allegation of discrimination"); Schmitz v. St. Regis Paper Co., 811 F.2d 131, 132 (2d Cir.1987) (per curiam) (holding that shift in justifications given at trial which indicated an after-the-fact rationalization by the defendant could be sufficient to prove pretext); and Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir.1993)("[I]n the ordinary case, such fundamentally different justifications for an employer's action ... give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that ... the official reasons [were not] the true reason [s]."). See also Burkett v. Mississippi Dept. of Mental Health, Civ. A. No. 3:07cv516–DPJ–JCS, 2010 WL 55936, *2 (S.D.Miss. Jan. 4, 2010) (plaintiff "insists the Defendant's explanation-offered three years after the fact-is inconsistent with Defendant's previous positions and therefore raises an inference of pretext."), citing Nasti v. CIBA Specialty Chem. Corp., 492 F.3d 589, 594 (5th Cir.2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct.")

29    In its reply (# 33 at p. 5), Sanderson Farms states that it transcribed from Company documents, verbatim and without modification or elaboration, the employee comments made about Plaintiff and attached copies of the documents as exhibits, plus deposition testimony of Veronica Campbell (# 28, Ex. D) and Vania Nelson (Ex. E at 43–47, reporting grunting and some rolling eyes when Plaintiff's name was mentioned, but does not know why) who observed the body language and noted the comments at the training sessions on August 19 and 20, 2009.
      The Court observes that the context of these training sessions is important and may lead to a different interpretation of what went on and of the "complaints." As stated by Campbell and Nelson in their depositions, these meetings were held in an attempt to keep the employees from unionizing. Campbell stated that "there was some conversation at Waco processing of someone—some of the employees were disgruntled and stating they were going to start a union." Ex. D at p. 12. She also stated that she had no specialized training in reading body language, nor had she ever done it before. Id. at p. 15. She also stated that only in the third training session was there expressed some disgruntlement by between five and ten unidentified employees about going to Plaintiff about complaints and that they did not like or trust her, but they did not say why. Id . at 25–26, 30–31. The approximately 16 attendees were also upset about not getting enough hours. Id. at 25–26. Campbell testified, "They were complaining in general." Id. at 26. The second day was largely the same as the first.

30    The Court has added the last three questions and answers so as to accurately portray the testimony and context regarding the progressive discipline police.

31    The Court is unable to tell from the evidence whether or not Defendants had a progressive disciplinary policy for salaried employees. If it did, that would raise additional questions about the total absence of documentation in her file regarding the articulated legitimate reason for her discharge.

32    Rule 803(6) provides,
           (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if
           (A) the record was made at or near the time by-or from information transmitted by-someone with knowledge;
           (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
           (C) making the record was a regular practice of that activity;
           (D) all these conditions are shown by the testimony of the custodian or other qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
           (E) neither the source of information nor the method of circumstances of preparation indicate a lack of trustworthiness.
         Furthermore they are not summaries of "voluminous" records to be admissible under Federal Rule of Evidence 1006.

**Carroll v. Sanderson Farms, Inc., Not Reported in F.Supp.2d (2012)**

2012 WL 3866886, 19 Wage & Hour Cas.2d (BNA) 1408, 27 A.D. Cases 108

[33]   These cases broadly construe the definition of "employee" in the retaliation provision, which they find to be ambiguous, to include former employees as well as current employees and the statute as prohibiting discrimination related to or arising out of the employment relationship. *See, e.g., Pantchenko,* 581 F.2d at 1055.

[34]   There is a division of opinion whether retaliation occurring before and/or after the filing of a discrimination EEOC charge must be exhausted by being included in a timely EEOC charge. The Fourth Circuit has held that a retaliation relates back to an EEOC charge and is reasonably related to the discrimination charge so the EEOC remedy is exhausted. *Nealon v. Stone,* 958 F.2d 584 (4th Cir.1992). The First Circuit, in accord with the majority of federal appellate courts, including the Fifth Circuit, has concluded that retaliation claims are preserved if they are reasonably related to and arise out of the discrimination complained of to the agency, when the retaliation is for the filing of the agency complaint itself, i.e., when the retaliation occurs after the filing of the charge. *Clockdile v. New Hampshire Dep't of Corrections,* 245 F.3d 1, 4 & n. 3 (1st Cir.2001) (and collected cases). Other courts, in the wake of *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (holding that a Title VII plaintiff may not recover for discrete acts of discrimination that occurred beyond the statutory limitations period and are thus time-barred even where they are related to acts alleged in timely filed EEOC charges, but recognizing that "hostile work environment claims are different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct ... occur[ring] over a series of days or perhaps years"), have concluded that plaintiffs must file an amended or new charge for discrete acts of retaliation after their initial charge has been filed. *Martinez v. Potter,* 347 F.3d 1208, 1210–11 (10th Cir.2003); *Hernandez v. Guttierez,* 656 F.Supp.2d 101, 2009 WL 2998115, *3 (D.D.C. Sept.19, 2009) (acknowledging split in authority in the District of Columbia but agreeing with the majority of courts in that district that *Morgan* should bar non-exhausted claims of discrete acts whether they occurred after the filing of a complaint and regardless of whether they are sufficiently related to exhausted claims). Other courts narrowly construe *Morgan. Jones v. Calvert Group, Ltd.,* 551 F.3d 297 (4th Cir.2009) (opining that *Morgan* discussed only to the limitations time for filing an EEOC charge for discrete unlawful employment acts and does not apply to the issue of exhaustion requirements for claims of related events arising after the filing of the EEOC charge); *Lewis v. District of Columbia,* 535 F.Supp.2d 1, 8 (D.D.C.2008) (dismissing claim for failure to exhaust administrative remedies but opining that *Morgan* would allow a court to consider a subsequent act if it was part of a continuous and ongoing pattern that a reasonable investigation would uncover); *Hazel v. Washington Metropolitan Area Transit Auth.,* No. 02–1375, 2006 WL 3623693, *8 (D.D.C. Dec.4, 2006) (no exhaustion required for additional complaint of retaliation other than initial charge).

[35]   The same holds true for retaliation claims under the TCHRA. *Norfleet v. EverBank,* Civ. A. No. 3:11–CV–3041–B, 2012 WL 400361 (N.D.Tex. Feb.8, 2012); *Williamson v. American National Ins. Co.,* 695 F.Supp.2d 431, 472 (S.D.Tex.2010).

---

End of Document                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.