## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ARTIS ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-cv-02126 |
| | § | |
| EDUCATIONAL COMMISSION OF | § | |
| FOREIGN MEDICAL GRADUATES, | § | |
| | § | |
| Defendant. | § | |

## EDUCATIONAL COMMISSION OF FOREIGN MEDICAL GRADUATES'
## REPLY IN SUPPORT OF COMPLETE MOTION FOR SUMMARY JUDGMENT[1]

Ellis relies exclusively on her subjective belief and mischaracterization of the facts in her Response (Doc. 35) to Defendant Educational Commission of Foreign Graduates' ("ECFMG") Amended MSJ (Doc. 34) in a failed attempt to manufacture fact questions.  This Court should grant ECFMG's Amended MSJ because Ellis has no evidence that ECFMG intentionally interfered with her FMLA protected rights by failing to restore her to her position after her fifth and final request for FMLA leave or by failing to grant her all of the leave she requested.  Ellis also fails to submit competent evidence of pretext to establish that she was retaliated against because she took FMLA leave.  Ellis's ADA discrimination claim similarly fails as a matter of law because there is no competent evidence of disparate treatment under nearly identical circumstances and no evidence of pretext.[2]  This Court should grant summary judgment on all of Ellis's remaining claims.

---

[1]  Plaintiff Artis Ellis's Response in Opposition to Defendant's Motion for Summary Judgment ("Response") was improperly linked to Defendant's Document 32.  Ellis's Response should have been linked to Defendant Educational Commission of Foreign Medical Graduates' Amended Motion for Complete Summary Judgment ("Amended MSJ") at Document 34.  In this Reply in Support of Complete Motion for Summary Judgment ("Reply"), reference to Plaintiff's exhibits will appear as "Pl's Ex. __" (as set forth in Document 35) and reference to Defendant's exhibits will appear as "Ex. __" (as set forth and attached to Document 34).

[2]  Ellis failed to address her ADA retaliation claim in her Response and therefore does not dispute that this claim must be dismissed as a matter of law for failure to satisfy her *prima facie*,  provide evidence of pretext, or establish "but for" causation.

A.      **Ellis's FMLA Interference Claim Should be Dismissed as a Matter of Law.**

The Court should dismiss Ellis's FMLA interference claim because Ellis has no evidence that ECFMG failed to reinstate her and cannot refute the undisputed evidence to the contrary.  *See Lister v. Nat'l Oilwell Varco, LP*, No. H-11-0108, 2013 WL 5515196, *29 (S.D. Tex. Sept. 30, 2013) (dismissing an FMLA interference claim); *Carroll v. Sanderson Farms, Inc.,* No. H10-3108, 20012 WL 3866886, *21 (S.D. Tex. Sept. 5, 2012) (J. Harmon) (granting summary judgment on a reinstatement claim where the employer terminated an employee's employment on the first day she returned from leave).  As established in ECFMG's Amended MSJ, ECFMG reinstated Ellis to her position as Center Manager on October 22, 2012, the day Ellis returned from her fifth leave of absence. Pl's Ex. C, 151:21-152:2; Ex. 1, 147:25-148:7; Ex. 28.  Upon receipt of her Fitness-for-Duty to Return to Work on October 22, 2012 (after taking the full amount of approved time), ECFMG's FMLA leave administrator, Sharon Trowell-Roman, sent Ellis a letter confirming her full release and return to work.  Ex. 1, 154:4-22; Exs. 27, 28.  Ellis herself admits that she returned to work on October 22, 2012, and attended meetings with Betty LeHew and her Directors. Ex. 1, 153:5-17, 154:9-22, 159:6-12.  Ellis's timekeeping records also reflect that she was compensated for her time worked that day.  Ex. 37.  ECFMG did not terminate Ellis's employment as Center Manager until November 1, 2012 after Ambrose completed the investigation into Ellis's wrongdoings.  Ex. 1, 219:12-18; Ex. 4, 13:13-14:4, 51:3-9; Ex. 5, 6:21-7:7.  These facts are all undisputed, and Ellis offers no evidence in support of her claim that ECFMG failed to reinstate her as Center Manager when she returned from leave.  Ellis's FMLA interference claim, therefore, fails as a matter of law.

Rather than rely on the other alleged bases of  FMLA interference that she referenced in her deposition—ECFMG inviting her to attend an interview while she was on leave and employees calling to check on her well-being—Ellis instead offers new support for this claim in her Response.

Ellis now contends that ECFMG interfered with her prescriptive FMLA rights by allegedly denying her a sixth FMLA leave.  Response at 8, 17-18.  Ellis's new support for her FMLA interference claim also fails to establish that ECFMG denied her any FMLA rights as a matter of law for several reasons.  First, Ellis never applied for another leave of absence after she returned from surgery on October 22.  Second, even if Ellis had applied for another leave of absence after she returned from surgery, she admits she was not entitled to additional FMLA leave because she was ready and able to work according to both her and her physician.  Third, Ellis was not prejudiced by any alleged denial of leave.

       1)       **Ellis never applied for a sixth leave of absence.**

Ellis's allegation that ECFMG denied her another leave of absence upon her return to work on the 22nd flies in the face of Ellis's admissions that she took all of the leave she requested and ECFMG never discouraged her from taking leave.  Ex. 1, 203:10-13, 227:11-17 ("Q.  And… do you feel like anyone tried to dissuade you from taking leave, in ECFMG management, or tried to prevent you from taking leave?  A. No.  I worked there over seven years.  So if I was there over seven years and these life-changing events happened, I qualified each time to take it.  So no one said, 'No, you cannot take it…'"); Ex. 35 (ECFMG/ELLIS 0387-396).  After returning to work, Ellis alleges that she verbally asked LeHew about going back out on leave because she was worried that the stress would have a negative impact on her health.  Response, p. 18.  Ellis fails to submit competent evidence that she applied for a sixth leave, however.  To the contrary, Ellis admits that she never contacted the ECFMG FMLA administrator (Trowell-Roman) about her alleged *additional* leave request, never completed the FMLA paperwork to apply for a sixth leave, and never contacted her physician to complete a medical certification for an additional request for

FMLA leave because she was out on paid administrative leave.  Pl's Ex. C, 203:20-204:2, 204:14-205:21; Ex. 1, 206:3-12; Ex. A, 207:18-208:10, 210:19-212:5.[3]

> **2)      Ellis was not entitled to another FMLA leave because she was able to work.**

To establish a *prima facie case* of FMLA interference, an employee must show, among other things, that she was entitled to leave.  *See McCollum v. Puckett Machinery Co*, 628 Fed. Appx. 225, 230 (5th Cir. 2015) (affirming summary judgment on an FMLA interference claim because the employee was not entitled to FMLA leave).  In order to be "entitled to leave," an employee must prove that she had a serious health condition that makes the employee unable to perform the functions of her job.  29 C.F.R. §825.112; *Mauder v. Metropolitan Transit Authority of Harris County, Texas*, 446 F.3d 574, 581-82 (5th Cir. 2006) (affirming Judge Harmon's grant of summary judgment on an FMLA interference claim because the employee did not have a qualifying "serious health condition" as required under FMLA).  An employee who has a condition that does not prevent her from performing the functions of her job does not qualify for protection under the FMLA.  *See Murray v. Red Kap Indust., Inc.,* 124 F.3d 695, 698-699 (5th Cir. 1997) (affirming judgment against an employee whose testimony about the need for leave due to stress contradicted her work release which permitted her to return to work); *Cole v. Sisters of Charity of the Incarnate Word*, 79 F. Supp. 2d 668, 672 (E.D. Tex. 1999) (granting summary judgment in an FMLA case because the employee could perform her job, and therefore did not have a serious health condition).  Simply put, being able to work prevents an employee from availing herself of the FMLA's protection.  *Id.*

Ellis admits that aside from wearing an eye patch after surgery, she was able to work on October 22, 2012 when she returned to work, through the time ECFMG terminated her employment

---

[3]      These are all steps Ellis knew she was required to complete as she had on five prior occasions.  Ex. 1, 226:2-25; Ex. 35.  ECFMG attaches "Ex. A" to this Reply as supplemental deposition testimony of Ellis.

on November 1, 2012.  Ex. A, 211:24-213:19 ("Q. Aside from the eye patch, did you feel physically able to work October 22nd and after? A. **I did**.");  Pl's Ex. C, 150:3-20, 151:1-4.  Moreover, Ellis's own doctor corroborated that Ellis was able to perform the essential functions of her job when she returned to work on October 22, 2012.  Ex. 28 (Fitness-for-Duty signed by Ellis and her physician stating that she could perform the essential functions of her job upon her return on October 22, 2012 with no restrictions);  Ex. 1, 147:8-10, 147:15-148:18;  Pl's Ex. C, 203:10-13.[4]  As a result, Ellis would not have been entitled to additional FMLA leave even had she applied for it.

> **3)**      **Ellis suffered no prejudice as a result of any alleged denial of FMLA leave.**

In addition to giving the employer notice of the need for leave, the employee must also prove that the interference with FMLA leave caused her prejudice in order to prevail on an interference claim.  *See Ragsdale v. Wolverine World Wide Inc*., 535 U.S. 81, 89 (2002); *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007); *Mercer v. Arbor E & T, LLC*, No. 11-cv-3600, 2013 WL 164107, *16 (S.D. Tex. Jan. 15, 2013).  Ellis alleges she needed the leave to avoid the stress at work.  ECFMG's decision to place her on paid administrative leave, however, not only relieved her of any stress work would have caused her, it also compensated her for the time off as opposed to the FMLA leave Ellis claims she requested.  Pl's Ex. C, 201:9-202:1.  Because ECFMG granted Ellis additional leave, and paid leave at that, Ellis suffered no prejudice or "real impairment" of her rights.  *See Downey,* 510 F.3d at 540; *Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 634-35 (W.D. Tex. 2015) (granting summary judgment on an FMLA interference claim for lack of prejudice when the employee received paid time and was still permitted to attend doctors' appointments).

---

[4]  In Ellis's FMLA certification, her physician stated that her surgery would not cause episodic flare-ups preventing her from performing her job functions.  Ex. 35, ECFMG/ELLIS 0394.

**B.      Ellis's FMLA Retaliation Claim Should be Dismissed as a Matter of Law.**

The Court should also dismiss Ellis's FMLA retaliation claim because Ellis has no evidence of pretext or but for causation.   Ambrose terminated Ellis's employment after a thorough investigation prompted by an employee's anonymous letter <u>and</u> employees' verbal complaints to managers about Ellis during Ellis's leave.   Ex. 4, 19:4-28:25, 54:6-22, 55:4-7, 55:23-57:4; Ex. 5, 30:17-31:3; 34:24-36:16; Ex. 23; Ex. 29.   Ambrose concluded that Ellis violated multiple policies and lost faith in her ability to lead the Houston Center due to her dishonesty and poor judgment. Ex. 4, 36:4-7, 36:24-38:23; Ex. 29.   Thus, ECFMG terminated Ellis's employment for legitimate, non-retaliatory reasons, and Ellis fails to satisfy her ultimate burden of proving that ECFMG's reason for termination was pretextual or that her employment would not have been terminated "but for" her leave.[5]

Ellis's reliance on her subjective belief of retaliation cannot establish pretext, "but for" causation, or otherwise save her FMLA retaliation claim.   Ellis attempts to defeat summary judgment by arguing that she did not violate the policies that ECFMG contends she violated. Response at 12-15.   It is not the employee's interpretation of an employer's policy that is relevant, but rather it is only the <u>employer's good faith belief</u> that an employee violated a policy that is dispositive.   *See Hoogstra v. West Asset Mgmt., Inc*., 560 F. Supp. 2d 515, 524 (E.D. Tex. 2006) (holding an employee disputing the underlying facts of an employer's decision or denying the policy violations are insufficient to prove pretext in an FMLA retaliation claim); *Jones v. Continental Airlines, Inc*., No. Civ. A. H-04-2246, 2005 WL 2233619, *4 (S.D. Tex. Sept. 14, 2005) (J. Harmon) (granting summary judgment in an FMLA retaliation case where the employer terminated the employee for dishonesty and the employee failed to disprove the employer's good

---

[5]      *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (holding that plaintiff must satisfy pretext and but for causation when alleging a retaliation claim).

faith belief); *Jarjoura v. Ericsson, Inc.*, 266 F. Supp. 2d 519, 531-532 (N.D. Tex. 2003) (holding that an employee's subjective belief that she did not violate a policy did not create a fact issue in an FMLA retaliation case).

Despite Ellis's mischaracterization of the facts, the undisputed testimony in this case from ECFMG is that Ellis violated its Relationship Policy by supervising and promoting her daughter's father for over three years.  Nancy Ambrose, the decision maker in this case, testified unequivocally that Ellis's relationship with Troi Bryant violated the Relationship Policy because Bryant was a "significant other" under the Relationship Policy.  *See* Response, p. 1; Ex. 4, 13:18-14:16, 25:2-7 (Q. "So under these definitions of 'relative,' they are not relatives to each other; is that right? A. **Well, they are in a significant other relationship.** Q. And you made that determination? A. Yes."), 29:19-24; Ex. 8, II; Ex. 9.  Likewise, ECFMG's Vice President of Human Resources, Betty LeHew, also unequivocally testified that Ellis violated the Relationship Policy.  Ex. 5, 23:24-24:9 ("Q. So how did Ms. Ellis violate the personal relationship policy?  A. That would fall under the definition of 'significant other.'  A. Significant other. How so?  A. She hired and then subsequently promoted a man who was the father of her child without disclosing that or getting approval from anyone in a direct reporting relationship.  Q. We're talking about Troi, right? A. Yes."), 30:17-31:3.  Indeed, it is undisputed that Ellis and Bryant co-parented their daughter for over twenty years at the time ECFMG hired Bryant, and Ambrose determined that Ellis's failure to disclose that relationship violated the Relationship Policy.  Ex. 1, 20:17-21:16; Ex. 4, 25:4-7, 29:19-24; Ex. 6, 22:20-25:11, 23:23-27:5; Ex. 16.[6]

In addition to violating the Relationship Policy, ECFMG also believed in good faith that Ellis violated the Data Security and Certification Policies, and Ellis admits that she did.  Ex. 30.

---

[6]        Ellis argues that she had "nothing to gain" by hiring her daughter's father.  Response at 13.  Bryant, however, testified that he still assisted their daughter financially, their daughter lived with Bryant, and they still co-parented.  Ex. 6, 25:23-27:5, 77:16-79:19, 79:24-80:4, 93:1-4, 95:22-96:25, 98:4-12, 100:1-18.

Ellis does not dispute that she shared her secure password with a **non**-management employee to perform the management function of certifying high stakes medical exams, and that was one of the policy violations for which ECFMG terminated her employment.  Ex. 1, 99:23-102:6, 106:6-107:8, 165:12-23, 166:12-19, 178:13-181:16, 322:5-8; Ex. 4, 29:19-24, 31:12-33:17; Ex. 29; Ex. 30 (ECFMG/Ellis 617-618).  Although Ellis now argues that she was "recovering from brain surgery" and "highly medicated" at the time of the violation so she does not remember sharing her password, Ellis <u>does not deny</u> that she violated the policy.[7]  Response, p. 14; Pl's Ex. B, ¶18.  Ellis only argues that it doesn't "make sense" why Ellis called non-manager Dalberg to certify the exam.  Response, p. 15.  ECFMG agrees that Ellis had no reason to call Dalberg because Ellis was well aware that Ambrose could certify exams on her behalf, as she had done many times before.  Ex. 1, 175:24-176:24; Ex. 4, 29:1-31:3; Ex. 24.  Regardless, Ellis admits that only management can certify an exam, that Dalberg was not a manager, and that she made a bad decision when she shared her password with Dalberg to certify the exam.  Ex. 1, 175:1-5, 178:4-181:4; Ex. 10; Ex. 30, ECFMG/Ellis 00617-618.  As a result, Ellis's FMLA retaliation claim fails as a matter of law.

Ellis also fails to survive summary judgment on her FMLA retaliation claim because she offers no evidence of disparate treatment.  The Fifth Circuit requires a plaintiff to submit evidence that she was treated differently under "nearly identical circumstances," which requires that both employees have the same job or responsibilities, same supervisor or decision-maker, essentially comparable employment histories, and the same work rule violation in order to be a comparator. *Lee v. Kansas City S. Ry. Co.*, 575 F.3d 253, 262 (5th Cir. 2009) (applying the "nearly identical" standard).  There is no such evidence in the case at bar.

---

[7]       According to the record evidence, Ellis shared her password with Dalberg on early morning of September 13, 2012, and her surgery did not occur until the following day on September 14, 2012.  Ex. 4, 28:7-25, 29:19-24; Ex. 5, 36:21-39:1; Exs. 9, 10; Ex. 25, ECFMG/ELLIS 6975-6977, 6974; Ex. 29, ¶2.  Ellis could not have been "recovering from brain surgery" at this time as she alleges in her Response.  Doc. 1, ¶10; Response at 14; Ex. 36, ECFMG/ELLIS 03893.  Moreover, Dalberg certified **six** exams, not one.  Ex. 25, ECFMG/ELLIS 6975-6977, 6974.

Despite Ellis's insistence to the contrary, LeHew is not her comparator because she did not violate the Relationship Policy as Ellis contends and she is not similarly situated to Ellis. No facts support Ellis's belief that Lehew violated the Relationship Policy. Pl's Ex. B, ¶17; Ex. 4, 57:18-59:5; Ex. 5, 26:21-27:21. Based on a plain reading of the policy, because LeHew disclosed her relationship to her step-daughter and management approved the hiring, there is no violation. Ex. 4, 57:18-59:5; Ex. 5, 26:21-27:21; Ex. 8, §§ V, D, E. Ellis admitted that she had no knowledge about LeHew's disclosure and the approval received to hire her step-daughter. Ex. 1, 160:25-161:9, 33:16-324:11. LeHew is not similarly situated to Ellis because Lehew is the Vice President of Human Resources while Ellis was the Houston Center Manager. Ex. 3; Ex. 17. The women had different job titles, job duties, and reported to different supervisors. Ex. 1, 313:13-15; Ex. 5, pp. 5:11-15, 7:13-22, 11:11-23, 45:24-46:4; Ex. 20. There is also no evidence that LeHew had a prior disciplinary history, while Ellis had a prior corrective action. Exs. 19, 20.

Moreover, Ellis also fails to prove disparate treatment with respect to the Data Security and Certification Policies. Ex. 5, 38:24-39:1; Ex. 17, ¶4. Ellis alleges that her Assistant Center Manager, Brent Biggs, shared his password. Pl's Ex. B, ¶18.[8] Ellis supervised Biggs, however. If she had knowledge of any improper password sharing, Ellis was responsible for the decision to hold Biggs accountable, and review the matter and any corrective actions resulting from same with her Director and with Human Resources. Ex. 17. Ellis did not do this, however. *Id.* There can be no disparate treatment with respect to Biggs because ECFMG had no knowledge that Biggs violated any policy let alone a nearly identical one. Ex. 5, 39:12-21; Ex. 17. Biggs is also not a proper comparator because he held a different position than Ellis, performed different job duties, and had a

---

[8] Ellis does not allege that Biggs violated the Data Security and Certification Policies, while Ellis did. Ex. 10.

different supervisor.  Ex. 1, 189:2-6; Ex. 4, 44:9-12.  Also, there is no evidence that Biggs had any prior disciplinary history.  Ex. 5, 39:12-21; Ex. 17.[9]

Ellis also alleges that Chris Paul, her boss, was treated more favorably than she was because he was given an executive coach to help him with his management style and she was not. Response, p. 19.[10]  Paul similarly does not qualify as a comparator under the strict standard.  Paul reported to the Executive Director, Ann Jobe and later Kim LeBlanc, and Paul was one management level above Ellis.  Ex. 1, 188:13-189:6; Ex. 4, 16:17-17:4; Ex. 5, 45:20-46:4.  Although Paul had issues with interpersonal skills, he never violated the Relationship or the Data Security and Certification Policies.  Ex. 5, 45:10-47:21.[11]  Ellis fails to satisfy her disparate treatment burden with respect to Paul as a result.

In her Response, Ellis also complains that ECFMG "deviated from its standard procedures" when it placed her on administrative leave.  Response, p. 15.  Ellis's allegation that ECFMG deviated from its Corrective Action Policy is contrary to the evidence, as the policy specifically provides that if a supervisor/manager perceives that an employee may behave in a disruptive manner, she may send the employee home with pay pending an investigation.  Pl's Ex. H, II. ECFMG believed administrative leave was appropriate because of the employees' complaints they received about intimidation by Ellis from the time prior to her leave and Ellis's dishonesty.  Ex. 4, 35:15-21; Ex. 5, 10:17-16:17, 16:5-10; Ex. 20, 1-3, ¶ (1) (2. e, f.) (complaints of intimidation); Exs.

---

[9]      Ellis also alleges that Dalberg, the non-manager who Ellis instructed to certify the exam using Ellis's password, was not disciplined.  Pl's Ex. B, ¶18.  Dalberg is also not a proper comparator because she held a different position, performed different job duties, and had a different supervisor.  Ex. 1, 175:3-5; Ex. 4, 29:19-24; Ex. 5, 40:2-10. There is also no evidence that Dalberg had any prior discipline.

[10]     Although Ellis raises this argument in a cursory fashion under the disability discrimination claim, ECFMG will address the reasons Paul is not a comparator in this section discussing the other alleged comparators.

[11]     Indeed, ECFMG immediately terminated Paul's employment for violating other policies a couple of years after ECFMG terminated Ellis's employment.  Ex. 5, 42:4-17.

22, Ex. 23.  ECFMG, therefore, was justified in its decision to place Ellis on paid administrative leave under the policy.

After Ambrose investigated the concerns raised and considered Ellis's responses to those concerns, Ambrose terminated Ellis's employment.  Ex. 5, 16:24-17:21; Pl's Ex. H, II (ECFMG/Ellis 6775); Ex. 29.  Under the Corrective Action policy, if "at any point a manager feels the violations are severe or frequent, it can be accelerated to immediate termination."  Ex. 5, 18:13-22.[12]  There is no evidence that ECFMG did not follow its internal policies and Ellis fails to satisfy her burden to prove pretext.  Regardless, a failure to follow internal procedures is insufficient to create a genuine issue of material fact as to discriminatory motive.  *See Grubb v. S.W. Airlines*, 296 Fed. Appx. 383, 390 (5th Cir. 2008) (holding that a failure to follow internal policies does not create a fact issue on pretext and granting summary judgment in an FMLA retaliation case).

Finally, there is no evidence that but for Ellis's leave of absence ECFMG would not have terminated her employment when it did or that Ellis's leave played any factor in Ambrose's decision.  Ellis's termination occurred right after ECFMG discovered and investigated Ellis's multiple policy violations and had reason to question Ellis's honesty.  Ex. 4, 13:18-14:4; Ex. 29. Courts hold that temporal proximity between the dates of leave and discharge alone is not sufficient to prove pretext or causation on an FMLA retaliation claim and Ellis's claim fails as a result. *Lister,* 2013 WL 5515196 at *30 (granting summary judgment on an FMLA retaliation claim even though the employee was terminated two weeks after he returned from leave, and holding that timing alone is not enough to prove retaliation); *Ramroop v. Cooper Cameron Corp*., No. Civ. A. H-05-1681, 2006 WL 696653, *4 (S.D. Tex. March 20, 2006) (granting summary judgment on an

---

[12]     The Corrective Action Policy further provides for underline immediate termination underline when an employee violates ECFMG policies, improperly releases confidential information, or fails to follow departmental guidelines.  Pl's Ex. H, §N (1, 6, 19, 21).

FMLA retaliation claim **even though the employee was terminated on the day he returned from leave**).

**C.      Ellis's Disability Discrimination Claim Should be Dismissed as a Matter of Law.**

As established in ECFMG's Amended MSJ and as set forth above, Ellis's ADA discrimination claim fails as a matter of law because Ellis fails to submit competent evidence that any non-disabled employee was treated more favorably under "nearly identical circumstances." *Supra* at Section A at pp. 9-10; *see Paske v. Fitzgerald,* 785 F.3d 977, 985 (5th Cir. 2015).   Indeed, Ellis fails to even address the "nearly identical" standard in her Response.   Moreover, ECFMG satisfied its burden of proving that it terminated Ellis's employment for legitimate, non-discriminatory reasons, including her two significant policy violations and the loss of trust in her ability to continue to lead the Houston Center.   *Supra* at pp. 6-9.   Ellis offers no evidence disputing ECFMG's good faith termination decision.   Ellis also fails to prove either that ECFMG's reasons for terminating her employment were a pretext for discrimination or that the real reason for the employment decision was discrimination.   Summary judgment is required as a result.   *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

Lastly, Ellis's reliance on the June 2012 email three months before her leave is misplaced and does not prevent the entry of summary judgment against Ellis.   Response, p. 21.   At that time in June, ECFMG had not yet received the employee complaints and the anonymous letter complaining about Ellis hiring relatives and friends.   In addition, Ellis had not yet violated the Data Security and Certification Policies, which occurred the day after she went on leave, and ECFMG did not yet know about her dishonesty.   Ex. 25, Ex. 29.   While the June 2012 email stated that there was no plan to terminate Ellis's employment at that time, it is not evidence of pretext and does not create a fact question for a November 1 decision based on Ellis's policy violations, poor judgment, and dishonesty that occurred subsequent to that email.   Ellis failed to submit any evidence that her

alleged disability was the real reason Ambrose decided to terminate Ellis's employment and this

claim should also be dismissed as a matter of law as a result.

<div style="margin-left: 40%;">

Respectfully submitted,


*/s/ Stefanie R. Moll*
Stefanie R. Moll
State Bar No. 24002870
Federal ID No. 22861
stefanie.moll@morganlewis.com
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 - Telephone
(713) 890-5001 – Facsimile

</div>

Of Counsel:
Erin E. O'Driscoll
State Bar No. 240460
Federal ID No. 582983
erin.odriscoll@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 - Telephone
(713) 890-5001 – Facsimile

<div style="margin-left: 40%;">

ATTORNEYS FOR DEFENDANT
EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

</div>

<div style="text-align:center;">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that on the 14th day of November 2016, the foregoing was served via CM/ECF to the following:

<div style="text-align:center;">

Alfonso Kennard, Jr.
Keenya R. Harrold
KENNARD RICHARDS P.C.
2603 August Drive, Suite 1450
Houston, Texas 77057

</div>

<div style="margin-left: 45%;">

*/s/ Erin O'Driscoll*
Erin O'Driscoll

</div>

DB1/ 89713946.6