# EXHIBIT A

Artis Ellis

1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ARTIS ELLIS                     :

    Plaintiff,               :

vs.                             :

EDUCATIONAL COMMISSION          :     C. A. No.

FOR FOREIGN MEDICAL             :     4:14-cv-02126

GRADUATES,                      :

    Defendant.               :


VIDEOTAPED DEPOSITION OF ARTIS ELLIS


Called as a witness by the Defendant, taken before Peggy Ann Antone, a Certified Shorthand Reporter in and for the State of Texas, on May 11, 2016, beginning at 9:51 a.m., at the offices of Kennard Richard P.C., 2603 Augusta Drive, Suite 1450, Houston, Texas, pursuant to the Federal Rules of Civil Procedure.

Artis Ellis

**206**

1  Misleading as worded. And to the extent that it calls
2  for a legal conclusion.
3      Q. (BY MS. O'DRISCOLL) October 22nd, 2012, or any
4  day thereafter prior to your termination, did you ever
5  call one of your physicians and ask for a doctor's note
6  to approve FMLA leave?
7      A. No, because I was out on administrative leave.
8      Q. Okay. And during that time after October 22nd,
9  2012, and thereafter, you were able and willing to work;
10 correct? You were in a physical condition such that you
11 could work; correct?
12     A. Repeat the question one more time.
13     Q. October 22nd, 2012, when you returned to work
14 on full release, you, from that point forward, were able
15 to work; correct?
16         MR. KENNARD: Hold on. Objection. Assumes
17 facts. Misstates -- and to the extent it misstates
18 previous testimony. And misleading as worded.
19         MS. O'DRISCOLL: How does that misstate
20 previous testimony?
21         MR. KENNARD: Can you repeat back the
22 question, please? And to the extent that it does, but
23 go ahead and read back the question.
24         THE REPORTER: QUESTION: "October 22nd,
25 2012, when you returned to work on full release, you,

**207**

1  from that point forward, were able to work; correct?"
2          MR. KENNARD: So you -- by stating that she
3  was on full release, she testified earlier that one
4  doctor had given her a note, but that others had not
5  released her, one; two, and when you talk about leave
6  return, and as I've objected in other questions, you're
7  inferring that -- and trying to get her to reach some
8  legal conclusion that FMLA is the only vehicle by which
9  to get additional leave. As you know, the Americans
10 with Disabilities Act provides for additional leave or
11 additional time off as an accommodation in the
12 workplace. So whether it was -- she asked for FMLA or
13 not does not necessarily mean that she couldn't have
14 asked for a reasonable accommodation under the Americans
15 with Disabilities Act. So to that extent, it
16 potentially calls for a legal conclusion and misstates
17 previous testimony.
18     Q. (BY MS. O'DRISCOLL) I'm simply asking if you
19 were physically able to work October 22nd and forward?
20     A. With accommodation.
21     Q. And you never asked your -- your physician to
22 sign a document saying that you needed an accommodation;
23 correct?
24     A. I didn't -- what -- what document? The -- what
25 document are we talking --

**208**

1      Q. Any type of a doctor -- doctor's note, anything
2  of any sort that would say I can come back to work but I
3  need X, Y and Z, you never had a physician do that, did
4  you?
5      A. The physicians knew that I had a -- a patch.
6  My eyes were -- were crossed. Betty knew. Sharon knew.
7  I mean, Nancy and Chris was there. They saw it. They
8  knew.
9      Q. But did you ever have a doctor's note saying
10 anything to that effect?
11         MR. KENNARD: Objection. Asked and
12 answered.
13         MS. O'DRISCOLL: Well, she actually hasn't
14 answered it.
15         MR. KENNARD: You asked -- she's answered
16 it. You don't like the way that she's answered it. I
17 trust that she's answering it to the best of her
18 ability. But asking the same question over and over
19 again doesn't necessarily mean that she's going to give
20 you some response.
21         MS. O'DRISCOLL: No. Asking a question to
22 get an answer to the question I'm asking, not the
23 question that she wants it to be, but an answer to the
24 question I am asking.
25         MR. KENNARD: If she --

**209**

1          MS. O'DRISCOLL: That's all I'm asking for.
2          MR. KENNARD: Well, the problem is --
3          MS. O'DRISCOLL: There's two different --
4          MR. KENNARD: -- I'm hearing the same
5  question over and over again.
6          MS. O'DRISCOLL: That's because she's not
7  answering the question.
8          MR. KENNARD: Okay. I don't know what to
9  tell you, but you can't keep asking the same question
10 over and over again. If you want to phrase it in a way
11 that she might understand it better or ask it in a
12 different way, I mean, that's fine. But the same
13 question over and over again until you get the answer
14 that you think she should be giving, well, that's not
15 allowed for by the rules.
16         MS. O'DRISCOLL: Well, that's two different
17 things, Alfonso, and you know that. That's why this is
18 taking so long, because I ask a question and I'm not
19 getting an answer to my question. She can give whatever
20 is a truthful honest answer --
21         MR. KENNARD: Sure.
22         MS. O'DRISCOLL: In front of a judge and a
23 jury, and that's all I want.
24         MR. KENNARD: Sure.
25         MS. O'DRISCOLL: I just want a truthful

Artis Ellis

210

1  answer.
2          MR. KENNARD: And she's been -- she's under
3  oath. And if you have any reason to believe that she's
4  being untruthful, that's certainly something that can be
5  addressed at some later date. But for my purposes and
6  for the purpose of my objection, which is strictly that
7  it's been asked and answered, that's all my objection
8  is.
9          MS. O'DRISCOLL: Okay. Okay.
10         MR. KENNARD: I'm hearing the same question
11 over and over again. I'd be remiss not to object. I
12 would probably --
13         MS. O'DRISCOLL: I understand. I don't
14 want to use any more of my time on this.
15         MR. KENNARD: Or can ask it a different
16 way.
17         MS. O'DRISCOLL: I've asked it 800
18 different ways.
19    Q.  (BY MS. O'DRISCOLL) Ms. Ellis, did you wear a
20 patch to work on October 22nd, 2012?
21    A.  Yes, I did.
22    Q.  And did you have it on during these meetings
23 that you had with Ms. Ambrose, Mr. Paul, and Mr. LeHew?
24    A.  Yes, I did.
25    Q.  How long after that day on October 22nd did you

211

1  continue to wear an eye patch?
2    A.  To the best of my knowledge, probably about six
3  months.
4    Q.  And did you wear an eye patch every day?
5    A.  Yes.
6    Q.  And if it varied, you can say, but would it --
7  is this something that you wear all day long or only
8  when you do certain activities? Can you give us a sense
9  as to how long you would wear it?
10   A.  For the most part, all day.
11   Q.  All day every day.
12   A.  Yes.
13   Q.  For six months.
14   A.  Yes.
15   Q.  And this was a result of -- of the surgery that
16 you had had.
17   A.  Yes.
18   Q.  And did you in any way see that wearing an eye
19 patch was going to impact your job duties at all as
20 center manager?
21   A.  Maybe using a computer or the lighting.
22   Q.  Anything else?
23   A.  Not that I can think of.
24   Q.  Aside from the eye patch, did you feel
25 physically able to work October 22nd and after?

212

1    A.  I did.
2    Q.  And, in fact, did you tell the Texas Workforce
3  Commission on your online entries that you were ready
4  and able to work?
5    A.  I did.
6    Q.  If we go back to that big packet that we had,
7  if you could look at ECFMG/Ellis 542, and that is
8  Exhibit 25.
9          And if you look at the top, it says, "Texas
10 Workforce Commission Internet Claim Certification," and
11 it has your name, Artis Ellis --
12   A.  On 542?
13   Q.  Yes.
14   A.  I'm looking at 4.
15   Q.  Yes, 542.
16         Is this a document that -- that you filled
17 out on -- at multiple -- for different time periods for
18 the -- online with the TWC?
19   A.  Yes.
20   Q.  And at the top it says, "Texas Workforce
21 Commission Internet Claim Certification," and it has
22 your name, "Artis Ellis," and then "Claim Week Dated:
23 11-10-12, 11-17-12, Claim Period Covers 11-4-12 through
24 11-17-12."
25         So this is -- this is for the period of

213

1  time shortly -- just right after you were terminated
2  on -- on November 1st; correct?
3    A.  That is correct.
4    Q.  It says, "Initial Claim... 11-4-12.
5          "Filing date, 11-18," and then there's a
6  series of questions. And if you look at question number
7  5, "Were you physically able to work each day?" And you
8  checked, "Yes"; is that correct?
9    A.  Yes.
10   Q.  And number 6, "Were you available to accept
11 full-time work for all of the days and hours required
12 for the type of work that you are seeking, if it had
13 been offered?" And you checked, "Yes"; is that correct?
14   A.  Yes.
15   Q.  And you had to fill this out for -- for a
16 period of time while you were seeking unemployment.
17         Do you ever remember checking the box
18 saying, no, that you weren't able to work?
19   A.  No.
20   Q.  Okay. Do you recall what day you stopped
21 receiving short-term disability from Sun?
22   A.  I do not.
23   Q.  Do you recall if you received it right up until
24 the time you went back to work on -- on October 22nd,
25 2012?